UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| MASSEY ENERGY COMPANY, )<br><br>and )<br><br>MARFORK COAL COMPANY, INC., a )<br>Subsidiary of Massey Energy Company, )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE WEST VIRGINIA SUPREME COURT )<br>OF APPEALS, )<br><br>Defendant. ) | RECEIVED<br><br>AUG 2 8 2006<br><br>TERESA L. DEPPNER, CLERK<br>U.S. District Court<br>Southern District of West Virginia<br><br>Civil Action No. 2-06-0614<br>(Judge Copenhaver) |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE
COMPLAINT</u>**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

Introduction.......................................................................................................... 1

Statement of Case ................................................................................................. 2

Argument ............................................................................................................. 4

    I.. Under the *Rooker-Feldman* doctrine, this Court lacks subject matter
    jurisdiction to review the decisions of the West Virginia Supreme Court of
    Appeals ......................................................................................................... 4

        a. Plaintiffs complain of injuries caused by the state court judgment and the
        plaintiffs' constitutional claims are inextricably intertwined with the
        state court's judgment ................................................................................. 9

    II. Plaintiffs' claims of injury are barred by res judicata ....................................... 12

    III. Plaintiffs fail to state a claim upon which relief can be granted ...................... 12

    IV. Even if this Court were to find jurisdiction proper, this Court should
    abstain from interfering in the state proceedings, pursuant to the *Younger*
    abstention doctrine ...................................................................................... 13

        a. This case involves ongoing state proceedings ...................................... 15

        b. The relief requests implicates important and vital state interests ......... 15

        c. The plaintiffs had, have, and will continue to have adequate
        opportunities to raise their constitutional claims ................................. 17

    V. The *Burford* abstention doctrine also mandates dismissal of this case ............ 18

        a. This case raises difficult questions of state law bearing on policy
        problems of substantial public import whose importance transcends
        the result in the case at bar ................................................................... 18

        b. Exercise of federal review of the question in this case would be
        disruptive of state efforts to establish a coherent policy with respect
        to a matter of substantial public concern ............................................. 19

Conclusion .......................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

Bagley v. Blankenship, 246 S.E.2d 99 (W.Va. 1978) ..............................2, 12, 16

Burford v. Sun Oil Co., 63 S.Ct. 1098 (1943) ....................................18

Chafin v. Workman, 1998 WL 1297605, (S.D.W.V. 1998) ............................10

Cohen v. Manchin, 336 S.E.2d 171 (W.Va. 1985) ..................................3

Davani v. Virginia Department of Transportation,
   434 F.3d 712 (4th Cir. 2006) .................................................5, 6, 8

District of Columbia Court of Appeals v. Feldman,
   103 S.Ct. 1303 (1983).........................................................4, 5, 8

Duby v. Moran, 901 F. Supp. 215 (S.D.W.V. 1995).................................4

Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,
   125 S.Ct. 1517 (2005).........................................................5, 11

Federacion de Maestros de Puerto Rico v. Junta de Ralciones
   del Trabajo de Puerto Rico, 410 F.3d 17 (1st Cir. 2005)......................11

Guess v. Board of Medical Examiners, 967 F.2d 998
   (4th Cir. 1992)..............................................................9

Hoblock v. Albany County Bd. Of Elections,
   422 F.3d 77 (2nd Cir. 2005) .................................................8

Howell v. Supreme Court of Texas, 885 F.2d 308 (5th Cir. 1989) ..................10

Huffman v. Pursue, Ltd., 95 S.Ct. 1200 (1975) .................................16

Laird v. Tatum, 93 S.Ct. 7 (1972)..............................................3

Leaf v. Supreme Court of the State of Wisconsin,
   979 F.2d 589 (7th Cir. 1992) ................................................11

Marrese v. American Academy of Orthopaedic Surgeons,
   105 S.Ct. 1327 (1985)........................................................12

Middlesex County Ethics Comm. v. Garden State Bar Ass'n,
   102 S.Ct. 2515 (1982)....................................................13,14, 15

New Orleans Pub. Serv. Inc. v. Council of New Orleans,
109 S.Ct. 2506 (1989)......................................................................................13, 15, 18

Norfolk Southern v. McGraw, 71 Fed.Appx. 967 (4th Cir. 2003) ..........................14,15, 18

Pennzoil Co. v. Texaco, Inc., 107 S.Ct. 1519 (1987) ............................................15, 17, 19

Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,
4 F.3d 244 (4th Cir. 1993) ............................................................................14

Rooker v. Fidelity Trust Co., 44 S.Ct. 149 (1923)............................................................4,5

Smoot v. Dingess, 236 S.E.2d 468 (W.Va. 1977) ...............................................................3

State ex rel. Matko v. Ziegler, 179 S.E.2d 735 (1971) ........................................................3

Suarez Corp. Industries v. McGraw, 125 F.3d 222
(4th Cir. 1997) ...............................................................................................4

Trainor v. Hernandez, 97 S.Ct. 1911 (1977) ..............................................................14, 15

Younger v. Harris, 91 S.Ct. 760 (1971)...........................................................................13

**Statutes**

28 U.S.C.A. § 1257(a) (1993)............................................................................................4

28 U.S.C.A. § 1738 (1948) ..............................................................................................12

**Constitutions**

West Virginia Constitution, Art. VIII, Sec. 8 .......................................................................2

## INTRODUCTION

Plaintiffs are asking this Court to review final decisions of the Supreme Court of Appeals of West Virginia,[1] West Virginia's highest state court, under the guise of a constitutional challenge to the application of West Virginia Rule of Appellate Procedure 29 ("Rule 29"). Plaintiffs are two companies, Massey Energy Company ("Massey"), a holding company of several coal mining subsidiaries, and Marfork Coal Company, Inc. ("Marfork"), a coal mining subsidiary of Massey. The Supreme Court of Appeals of West Virginia ("West Virginia Supreme Court" or the "Court") in its official capacity is named as the defendant. Plaintiffs seek declaratory and injunctive relief under the due process clause of the Fourteenth Amendment from the West Virginia Supreme Court's application of Rule 29 in plaintiffs' previous and pending litigation.

Notwithstanding the fact that absolutely nothing prevented Plaintiffs from bringing this constitutional challenge in the state court, Massey and Marfork chose to attempt an "end-run" around the West Virginia Supreme Court by bringing this claim in the district court. Plaintiffs' claims are premised on the conclusion that they "have suffered and will suffer a deprivation of their constitutional due process" rights. Complaint ¶¶ 30, 32 & 36. Plaintiffs claim that Rule 29 fails to provide an impartial tribunal and the appearance of justice because it allows an individual justice to decide whether to disqualify himself or herself from hearing a case, and there is no review of that decision by an "impartial judicial officer." Complaint ¶ 1. To substantiate Plaintiffs' claim that their due process rights were violated, plaintiffs refer to Justice Larry Starcher's decisions to deny three of their disqualification motions. Complaint ¶¶ 22, 27, & 29-30. The plaintiffs ask this Court to declare Rule 29, "as construed and applied," unconstitutional under the Fourteenth Amendment to the United States Constitution and to order the West

---

[1] The Supreme Court of Appeals of West Virginia is misidentified in the caption of the complaint as the West Virginia Supreme Court of Appeals.

Virginia Supreme Court to amend Rule 29 so that "it provides for a fair hearing before an impartial tribunal of all motions for disqualification filed under Rule 29." Complaint ¶ Prayer for Relief.

Plaintiffs ask this federal district court to review and overturn a final judgment of West Virginia's highest court on constitutional grounds. Because Plaintiffs' constitutional claims are inextricably intertwined with the merits of the state court judgment, this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Such jurisdiction is exclusively in the hands of the United States Supreme Court.

Additionally, as discussed more fully below, Plaintiffs' claims of injury are barred by res judicata and failure to state a claim upon which relief can be granted.

Furthermore, even if this Court were to determine that subject matter jurisdiction to hear Plaintiffs' claims exists, which it does not, this Court should abstain from exercising such jurisdiction out of comity and respect for the courts of a sovereign State. Dismissal is appropriate under either the *Younger* or the *Burford* abstention doctrines.

## STATEMENT OF THE CASE

The Constitution of West Virginia gives the West Virginia Supreme Court the inherent rule-making power to "prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof... " West Virginia Constitution, Art. VIII, Section 8. The language of that Article authorizes the Court to censure, suspend and retire justices and judges in accordance with procedures and requirements detailed therein, but does not authorize or empower the Court to disqualify a justice from participation in a particular case. Id; *see also* Bagley v. Blankenship, 246 S.E.2d 99 (W.Va.

1978). The disqualification of a judge or justice from a particular case is dictated by the Code of Judicial Conduct.

The West Virginia Supreme Court of Appeals adopted Rule 29 to clarify the procedure for deciding motions to disqualify individual justices. Complaint ¶ 12. Rule 29 provides that, where a motion is made to disqualify or recuse an individual justice of the Supreme Court, the motion is decided by the challenged justice and not by the other members of the Court. This has long been the practice of both the West Virginia Supreme Court and the United States Supreme Court. Bagley, at 106; Cohen v. Manchin, 336 S.E.2d 171, 176 (W.Va. 1985); State ex rel. Matko v. Ziegler, 179 S.E.2d 735, 737 (W.Va. 1971), *overruled on other grounds*, Smoot v. Dingess, 236 S.E.2d 468 (W.Va. 1977); *see also* Laird v. Tatum, 93 S.Ct. 7 (1972) (Rehnquist, J., memorandum opinion denying motion to recuse himself). Recognizing that justices are bound by their judicial oaths and the Code of Judicial Conduct, the West Virginia Supreme Court has determined that the individual justice is best situated to consider the merits of and rule on such motions.

Here, plaintiffs complain of the denial of three such motions filed in actions before the West Virginia Supreme Court of Appeals. As pled by Plaintiffs in the Complaint, prior to June 16, 2005, plaintiff Marfork filed a motion for the disqualification of Justice Starcher in the matter Marfork Coal Company v. Timmermeyer, No. 051011. Complaint ¶ 22. On June 16, 2005, Justice Starcher denied the disqualification motion and issued a memorandum opinion. Id., at ¶ 23. Marfork renewed its disqualification motion on October 31, 2005. Id., at ¶ 27. Once again, Justice Starcher denied the motion. Id. Finally, on April 5, 2006, Plaintiffs filed for Justice Starcher's disqualification in the matter of State of West Virginia ex rel A.T. Massey v. The Honorable Jay M. Hoke, Judge of the 25th Judicial Circuit, et al., No. 060936. Id., at ¶ 28. That motion for disqualification was also denied.

3

Believing their motions for disqualification were wrongly decided ("Plaintiffs have suffered and will suffer a deprivation of their constitutional due process right..." Complaint ¶ 32 & 36), Plaintiffs, choosing not to raise their constitutional claims with the West Virginia Supreme Court, instead petitioned this Court to review those decisions. Further, Plaintiffs now seek prospective relief and ask this Court to order the highest court in the State of West Virginia to reform its appellate rules and apply those changes to cases currently pending before the Supreme Court and in various state trial courts.

## ARGUMENT

### I. Under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to review the decisions of the West Virginia Supreme Court of Appeals.

Under the *Rooker-Feldman* doctrine, "a United States District Court [generally] has no authority to review final judgments of a state court in judicial proceedings." District of Columbia Court of Appeals v. Feldman, 103 S.Ct. 1303, 1315 (1983); *see also* Rooker v. Fidelity Trust Co., 44 S.Ct. 149 (1923). The doctrine is premised on the fact that United States District Courts are courts of limited jurisdiction and do not have appellate jurisdiction over the courts of the various states. With the exception of habeas corpus cases, Congress has not given federal district courts the power "to hear constitutional claims adjudicated by state courts or claims that are inextricably intertwined with the merits of a state court judgment." Suarez Corp. Industries v. McGraw, 125 F.3d 222, 228 (4th Cir. 1997); *see also* Duby v. Moran, 901 F. Supp. 215, 216 (S.D.W.V. 1995) ("District courts have no subject matter jurisdiction over challenges to state court decisions in cases arising out of judicial proceedings, even if those challenges allege the state court's action was unconstitutional.") The United State Supreme Court has the exclusive jurisdiction to review state court decisions. 28 U.S.C.A. § 1257(a) (1993).

In Rooker, plaintiffs lost in state court, then filed suit in federal district court alleging that the adverse state court judgment was unconstitutional and asking that it be declared "null and

void." Rooker at 149-150. The United States Supreme Court stated that if the state-court decision was wrong, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." Id. at 150. Because Congress has empowered the United States Supreme Court alone to exercise appellate authority over a state-court judgment, dismissal for lack of jurisdiction was affirmed. Id. at 150.

In Feldman, two plaintiffs brought actions in federal court following denial of their petition to waive an existing court rule regarding the admission to the District of Columbia's bar by the District of Columbia's Court of Appeals. Again, because the D.C. high court's proceedings applying the rule to the plaintiffs were "judicial in nature," the United States Supreme Court ruled that the federal district court lacked subject matter jurisdiction. Feldman, at 1314.[2] The Supreme Court explained that a federal district court could not entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was "inextricably intertwined" with the state court's judgment. Davani v. Virginia Department of Transportation, 434 F.3d 712, 716 (4th Cir. 2006), *discussing* Feldman, at n. 16.

Until recently, whether federal claims were "inextricably intertwined" with the state court judgment was a matter judged by various standards among the federal circuit courts. However, in 2005 the United States Supreme Court issued an opinion which clarified the application of the *Rooker-Feldman* doctrine. Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 125 S.Ct. 1517 (2005); *see also* Davani, supra. (discussing the impact of Exxon on the analysis of claims barred by the Rooker-Feldman jurisdictional bar). Even though the Fourth Circuit stated that the Exxon opinion "reined in the expansive interpretation of the *Rooker-Feldman* doctrine," (Davani at 718), the doctrine remains directly applicable in this case.

---

[2] The Supreme Court did leave one avenue open for the district court to exercise jurisdiction and did not bar the district court from addressing the validity of the rule itself, so long as the plaintiffs did not seek review of the rule's application in a particular case. Id, at 1316-1317.

Exxon and Saudi Arabia had formed a joint venture to produce polyethylene in Saudi Arabia. Exxon at 1525. Exxon believed that Saudi Arabia was overcharging the venture for certain licenses. Id. Saudi Arabia sued Exxon in Delaware state court, seeking a declaratory judgment that the charges were proper. Id. While the lawsuit was pending in state court, Exxon filed a parallel lawsuit in the New Jersey federal district court. Id. Saudi Arabia moved to dismiss the federal court action. Id. When the motion was denied, Saudi Arabia filed an interlocutory appeal. Id. While the appeal was pending, the state case went to trial and Exxon was awarded judgment and significant damages. Id. The Third Circuit held that the entry of judgment in the state court divested the federal court of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Id. at 1526. The Supreme Court reversed, holding that the application of the *Rooker-Feldman* doctrine was inappropriate in that case because Exxon had merely filed parallel litigation against Saudi Arabia but did not seek redress from an injury that the state-court judgment itself caused. Id. at 1521-22, 1527. The Court remanded the case with guidance that preclusion or abstention doctrines may apply. Id. at 1527. For that reason, the Exxon opinion dealt with a separate issue from the issue presented in this case, where, as here, the state court judgment has been entered prior to the filing of the federal action. In so ruling, however, the Supreme Court's language provided excellent guidance on the application of the *Rooker-Feldman* doctrine, illuminated in the recent Fourth Circuit opinion Davani v. Virginia Dept. of Transportation.

In Davani, the Fourth Circuit Court of Appeals considered the impact of Exxon on the existing *Rooker-Feldman* regime and its application to a law suit brought by a former state employee alleging that his termination was discriminatory and retaliatory. Davani v. Virginia Dept. of Transportation, 434 F.3d 712 (4th Cir. 2006). In Davani, an employee of the Virginia Department of Transportation received three disciplinary warnings over the course of several

years. After the third warning, Davani was terminated. Id. at 713. Davani filed a grievance regarding the third warning and his termination with the Department, but a hearing officer upheld the termination. Id. Davani appealed the hearing officer's decision to the Virginia circuit court, which dismissed the appeal. Id. Davani then filed suit in federal district court alleging that the Department and his direct supervisors discriminated against him on the basis of his race, national origin, and religion; retaliated against him for filing prior Equal Employment Opportunity complaints; and violated state law by conspiring to injure his reputation. Id. The defendants moved to dismiss the complaint, arguing that the district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine and, in the alternative, that the suit was precluded by res judicata and collateral estoppel. Id. The district court granted defendant's motion, concluding that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. The district court did not address the preclusion arguments.

The Fourth Circuit held that the *Rooker-Feldman* doctrine did not bar Mr. Davani's federal suit. In so holding, the Court discussed the implications of the Supreme Court's ruling in Exxon, stating:

> "...Exxon requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply. ... **If, on the other hand, he is challenging the state-court decision, the *Rooker-Feldman* doctrine applies.** It is important to note that the *Rooker-Feldman* doctrine applies in this second situation even if the state-court loser did not argue to the state court the basis of recovery that he asserts in the federal district court. A claim seeking redress for an injury caused by the state court decision itself – even if the basis of the claim was not asserted to the state court – asks the federal district court to conduct appellate review of the state court decision. **Exxon clarifies, however, that § 1257(a) provides that only the Supreme Court may review state-court decisions.**"

Id. at 718-719 (internal citations omitted and emphasis added). The Court went on to hold that:

> "Under Exxon, then, *Feldman's* "inextricably intertwined" language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: **if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court judgment, and is therefore outside of the jurisdiction of the federal court."**

Id. at 719 (emphasis added), *citing* Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77, 86-87 (2nd Cir. 2005) ("[D]escribing a federal claim as "inextricably intertwined" with a state-court judgment only states a conclusion. *Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment.) Since the plaintiff did not allege that the state court judgment caused him injury, but alleged that the Appellees discriminated against him in violation of federal and state law, the Fourth Circuit determined that *Rooker-Feldman* did not bar Mr. Davani's claims. Davani at 719. The court did not decide whether Mr. Davani's claims would have been precluded under Virginia or federal law. Id. at n. 8.

The Second Circuit Court of Appeals has also recently provided additional guidance regarding whether federal plaintiffs are complaining of an injury caused by a state court judgment. Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77, 86-87 (2nd Cir. 2005). Since the Fourth Circuit stated that the Hoblock decision "put it well," it is useful to examine one of the examples provided by the court in that case. Davani at 719. In Hoblock, the court stated:

> "First, this requirement explains why a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court. Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised

8

any constitutional claims in state court, because only the Supreme
Court may hear appeals from state-court judgments."

Hoblock at 87.

Similarly, the Fourth Circuit has held that "[a]rtificial attempts to redefine the relief

sought are not sufficient to overcome the requirements of *[Rooker-]Feldman.*" Guess v. Board

of Medical Examiners, 967 F.2d 998, 1005 (4th Cir. 1992). Thus, if plaintiffs who lose in state

court recast their claims in federal court under the guise of federal constitutional claims that were

not raised or decided by the state court, *Rooker-Feldman* precludes jurisdiction if the

constitutional claims are inextricably intertwined with the merits of the state court judgment. Id.

at 1002-1003. In Feldman, the Supreme Court expressly declined to reach the question of

whether res judicata foreclosed litigation on Feldman's claims. Feldman at 1317. In a footnote,

however, the Court noted, "By failing to raise his [constitutional] claims in state court a plaintiff

may forfeit his right to obtain review of the state-court decision in any federal court. Id. at 1315

n. 16. The Court supported this statement by noting that: (1) state courts are competent to

adjudicate federal constitutional claims; (2) A state court should have the first opportunity to

consider the constitutionality of a state statute or rule so that is may give the statute a saving

construction; and (3) states have an important interest in regulating lawyers. Id.

**a. Plaintiffs complain of injuries caused by the state court judgment and the plaintiffs' constitutional claims are inextricably intertwined with the state court's judgment.**

In this case, the plaintiffs complain of injury from an alleged denial of due process under

the Fourteenth Amendment of the United States Constitution due to Justice Starcher's decisions

denying plaintiffs' repeated motions to disqualify him. Plaintiffs clearly claim injury as a result

of those state-court decisions. Without the state court decision of Justice Starcher, the plaintiffs

would have suffered no harm upon which a claim for relief could be based. Now, dissatisfied

with the denial of the motions for disqualification, plaintiffs ask this court to determine that those

9

disqualification motions were determined wrongly. In other words, as a necessary prerequisite to finding that the plaintiffs suffered harm to their due process rights, this Court must review the merits of the claims adjudicated in the state court. This is precisely what the *Rooker-Feldman* doctrine says the district court may not do.

Of course, this is not the first time that a state-court loser has attempted to challenge what it perceives as an unfavorable ruling in federal court. For example, in <u>Chafin v. Workman</u>, the plaintiff raised essentially the same claims as Massey and Marfork are raising here. In <u>Chafin</u>, Plaintiff complained that his due process rights were violated in two ways: First, that two justices of the West Virginia Supreme Court of Appeals denied his disqualification motions, and, second, that Rule 29 of the West Virginia Rules of Appellate Procedure failed to provide an objective system for disqualifying State Supreme Court Justices. <u>Chafin v. Workman</u>, 1998 WL 1297605, *1 (S.D.W.V. 1998), *upheld* 203 F.3d 819 (4th Cir. 2000). Judge Robert C. Chambers determined that the Plaintiff's claims were inextricably intertwined with the West Virginia Supreme Court's decisions with respect to the disqualification motions and that, as such, the claims were barred by the *Rooker-Feldman* doctrine. <u>Id</u>. at *7-9. Plaintiffs' claims in this case are nearly identical to the claims raised in <u>Chafin</u>.

Similarly, in a case discussed in Judge Chamber's opinion, <u>Howell v. Supreme Court of Texas</u>, the Fifth Circuit examined whether the *Rooker-Feldman* doctrine barred a plaintiff's claim that Rule 15a of the Texas Rules of Appellate Procedure, which addresses recusal and disqualification of judges, was unconstitutional. <u>Chafin</u> at *8, *citing* <u>Howell v. Supreme Court of Texas</u>, 885 F.2d 308 (5th Cir. 1989). In <u>Howell</u>, the plaintiff filed a §1983 action in federal court challenging the denial of his disqualification motions and the constitutionality of Rule 15a. The district court dismissed the case for lack of subject matter jurisdiction and the Fifth Circuit affirmed. <u>Id</u>. The court in <u>Howell</u> looked to the substance of the plaintiff's constitutional claims

and determined that plaintiff's claimed due process injuries were based on the justices' interpretations of the rule and refusal to recuse themselves and; therefore, plaintiff's claims were inextricably intertwined with the state court's decision. Id. Using the same logic, Judge Chambers determined that the substance of the plaintiff's complaint in Chafin was premised on the refusal of the West Virginia Supreme Court Justices to recuse themselves and, since the plaintiff would be unable to establish harm in the absence of those decisions, the constitutional claims were barred. Id.; see also Leaf v. Supreme Court of the State of Wisconsin, 979 F.2d 589 (7th Cir. 1992) (Claims that suspension from the practice of law violated the Constitution and that the ethical rules upon which suspension was based were independently unconstitutional and should be enjoined lest they be applied to her future conduct were barred, as former claim sought review of the state court decision and latter claim, where only the suspension gave the attorney standing to challenge the rules, was so intertwined with the judgment that it, too, lay outside federal jurisdiction.)

Finally, for the purposes of the *Rooker-Feldman* doctrine, the repeated denials of the motions for disqualification in this case amount to "final" judgments. Although some of the underlying actions are not completely resolved at the time of the filing of this action, the court's judgment on the issue of disqualification is final, even though other matters remain to be litigated. *See* Federacion de Maestros de Puerto Rico v. Junta de Ralciones del Trabajo de Puerto Rico, 410 F.3d 17, 26 (1st Cir. 2005) ("Thus, Exxon Mobil's explanation of the ASARCO hypothetical confirms that *Rooker-Feldman* applies where the state proceeding has ended *with respect to the issues that the federal plaintiff seeks to have reviewed in federal court,* even if other matters remain to be litigated.")(emphasis in original).

As such, this Court should find that plaintiffs are seeking appellate review of the state-court's final judgments concerning disqualification and that, under the *Rooker-Feldman* doctrine,

this Court lacks jurisdiction to hear such claims. Plaintiffs would be without any alleged harm if the disqualification motions had been granted; therefore, by definition, plaintiffs' constitutional claims are "inextricably intertwined" with the plaintiffs' claims that the denial of their disqualification motions were wrongly decided. Dismissal pursuant to the *Rooker-Feldman* doctrine is appropriate.

## II. Plaintiffs' claims of injury are barred by res judicata.

Preclusion in federal litigation following a judgment in state court depends upon the Full Faith and Credit Statute, 28 U.S.C.A. § 1738, which requires federal courts to give the judgment the same effect as the rendering state. Marrese v. American Academy of Orthopaedic Surgeons, 105 S.Ct. 1327 (1985). As the West Virginia Supreme Court has reviewed and issued decisions with regard to the merits of Plaintiffs' various motions for disqualification, those decisions must be given full faith and credit in this forum. As such, Plaintiffs' claims that Justice Starcher is biased and unable to hear the Plaintiffs' case has been ruled upon in state court. The state court determined that those claims were unfounded. As such, on the principles of res judicata and preclusion, the plaintiff should be barred from claiming otherwise. As a result, plaintiffs are without injury to support their alleged constitutional claims and lack standing to bring this claim.

## III. Plaintiffs fail to state a claim upon which relief can be granted.

As discussed above, the West Virginia Supreme Court lacks the constitutional power to summarily disqualify a justice from a particular case. Bagley v. Blankenship, 246 S.E.2d 99 (1978). As this is a well-settled matter of West Virginia law, the Plaintiffs' requested remedy is currently not within the power of the Supreme Court of Appeals of West Virginia. As such, one particular aspect of the requested relief (i.e., to order the West Virginia Supreme Court to adopt a rule that would have other justices, or a panel of justices, review the merits of disqualification motions) is outside of the scope of powers granted to the Supreme Court of Appeals of West

Virginia by the West Virginia Constitution. With respect to that request, the complaint fails to state a claim upon which relief may be granted.

**IV.  Even if this Court were to find jurisdiction proper, this Court should abstain from interfering in the state proceedings, pursuant to the *Younger* abstention doctrine.**

The *Younger* doctrine, arising from the United States Supreme Court's decision in Younger v. Harris, 91 S.Ct. 760 (1971), espouses a strong federal policy against federal court interference with pending state judicial proceedings absent "extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 102 S.Ct. 2515, 2521 (1982). The doctrine is born of two fundamental principles. The first is the principle of equity: even though federal courts have a duty to exercise the jurisdiction conferred upon them by Congress, equitable relief, such as the declaratory and injunctive relief sought by the plaintiffs here, is discretionary. The federal jurisdiction statutes:

> do not call into question the federal courts' discretion in determining whether to grant certain types of relief – a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted. Thus, there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is "the normal thing to do," Younger v. Harris, 401 U.S. at 45.

New Orleans Pub. Serv. Inc. v. Council of New Orleans, 109 S.Ct. 2506, 2513 (1989) (additional internal citations omitted) ("NOPSI"). The second fundamental principle is comity:

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

Id. at 2516, *quoting* Younger, 91 S.Ct. at 750.

The *Younger* doctrine "recognizes that state courts are fully competent to decide issues of federal law and has as a corollary the idea that all state and federal claims should be presented to

the state courts.  <u>Richmond, Fredericksburg & Potomac R.R. Co. v. Forst</u>, 4 F.3d 244, 251 (4th

Cir. 1993) (internal citation omitted).

> To restrain a state proceeding that afforded an adequate vehicle for
> vindicating the federal plaintiff's constitutional rights would entail
> an unseemly failure to give effect to the principle that state courts
> have the solemn responsibility equally with federal courts to
> safeguard constitutional rights and would reflect negatively upon
> the state court's ability to do so.

<u>Trainor v. Hernandez</u>, 97 S.Ct. 1911, 1917 (1977)(internal citations omitted).

The need for deference to these abstention principles in this case is particularly strong.

The entire Supreme Court of Appeals of West Virginia has now been haled into federal district

court to defend their application, as state court judges, of state law.  This case is strikingly

similar to a previous challenge brought against the West Virginia Supreme Court for their

application of Trial Court Rule 26.01 in <u>Norfolk Southern Rwy. Co. v. McGraw</u>, 71 Fed.Appx.

967 (4th Cir. 2003) (unpublished).  In <u>Norfolk</u>, the plaintiff railroads brought a §1983 action,

requesting a declaratory judgment that the operation of a state trial court rule and its application

in pending asbestos litigation violated their due process rights.  Pursuant to the *Younger* doctrine,

this Court abstained from exercising jurisdiction.  <u>Id</u>. at 969.  The Fourth Circuit upheld the

decision to abstain, finding that the principles of comity demanded abstention and that the

district court correctly determined that the dispute involved various ongoing judicial

proceedings, that West Virginia had an important interest in regulating its judicial system, and

that the railroads had an adequate opportunity in their state proceedings to raise their

constitutional challenges.  <u>Id</u>.

In determining when *Younger* abstention is appropriate, the Supreme Court has

articulated a three-part test.  <u>Middlesex</u>, 102 S.Ct. at 2521.  The Court held that a federal court

should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the

merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial

14

progress in the federal proceeding; that (2) implicated important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. Id.

### a. This case involves ongoing state proceedings.

The first *Younger* requirement is clearly met. Plaintiffs allege that they are seeking relief in cases currently pending before the West Virginia Supreme Court and that they are parties in numerous circuit court cases that are likely to appear before the West Virginia Supreme Court. The ongoing nature of the state proceedings is plain on its face.

### b. The relief requested implicates important and vital state interests.

The plaintiffs request that this Court order the West Virginia Supreme Court to amend its procedures for determining the merits of disqualification motions. Hence, this Court is being asked to interfere with West Virginia judicial procedures for handling the administration of the highest court of the state.

The United States Supreme Court "repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." Pennzoil Co. v. Texaco, Inc., 107 S.Ct. 1519, 1527 (1987); *see also* Middlesex, 102 S.Ct. at 2521 ("Proceedings necessary... for the functioning of the state judicial system ... evidence the state's substantial interest in the litigation."); NOPSI, 109 S.Ct. at 2518 (states have important interest in "proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial function."); Trainor, 97 S.Ct. at 1916 ("[I]n a Union where both States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunctions or otherwise, with legitimate state functions, particularly with the operation of state courts."); Norfolk at 970-971 (4th Circuit finds state interest in challenge to Trial Court Rule 26.01).

The West Virginia Supreme Court has discussed its vital duties to the State of West Virginia. In Bagley v. Blankenship, wherein plaintiffs asked that a special panel of justices consider the merits of a motion to disqualify a particular justice of the West Virginia Supreme Court, the court stated that:

> The Judicial Reorganization Amendment, Article VIII, Section 3, of the Constitution, placed heavy responsibilities on this Court for administration of the state's entire court system. The mandate of the people, so expressed, commands the members of the Court to be alert to the needs and requirements of the court system throughout the state.
>
> ...
>
> Despite the many and varied interests justices and judges may have in litigation, they have a commitment to the people, a responsibility for administration of justice, and sworn obligation to support the Constitution of the United States and the Constitution of West Virginia and to faithfully discharge the duties of their office. Abdication of these responsibilities is not to be taken lightly. *See* Laird v. Tatum, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972), a case wherein Justice William H. Rehnquist refused to disqualify himself from participation in litigation before the United State Supreme Court.

Bagley, 246 S.E.2d at 107-108.

West Virginia's vital interest in the administration of its courts cannot be overstated. It is not difficult to imagine the difficulties that would arise should this Court order that other justices or a panel of justices sit in judgment of challenged justices on the West Virginia Supreme Court. Plaintiffs suggest that, to satisfy due process, the Court must have a "mini-trial" of the justices hearing the case. The underlying assumption of such a request is that the justices will not be faithful to their constitutional responsibilities. *See* Huffman v. Pursue, Ltd., 95 S.Ct. 1200, 1211 (1975) ("Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do.") Would such proceedings require discovery? Would justices be required to take the stand in defense of a moving party's allegations before another justice or a panel of justices of the Court? Would

proceedings be necessary to determine if the justice or justices assigned to the contemplated "impartial tribunal" deciding the merits of the disqualification motion are sufficiently "impartial" to decide the motion? At what point would the process stop? Nor would plaintiffs be the only parties seeking such hearings, as plaintiffs' opponents have already filed a motion seeking the disqualification of Justice Benjamin. Without much effort, we can imagine that adversaries appearing before the court would institute such hearings wherever they suspect certain justices may not favor their position. Such a practice would wreck havoc upon the administration of the state's courts. Such a practice would degrade the oaths and Code of Judicial Conduct applicable to every judge in West Virginia, while adding an additional layer of "pre-litigation" to the judicial process in West Virginia. As such, this court should find that important state interests are implicated by this action and, therefore, the second *Younger* doctrine requirement is satisfied.

### c. The plaintiffs had, have, and will continue to have adequate opportunities to raise their constitutional claims.

A federal court should abstain from exercising jurisdiction if the federal plaintiff would have an adequate opportunity to raise its federal claims in state court. "[T]he burden on this points rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" Pennzoil, 107 S.Ct. at 1528. No such barrier exists.

The plaintiffs object to the application to them, as parties in pending state court proceedings, of state court rules dictating the procedure for the adjudication of disqualification motions. Plainly, the obvious forum in which to raise those claims is in those state court proceedings. Plaintiffs have made no effort to raise these constitutional claims before the West Virginia Supreme Court. They had, have and will continue to have the opportunity to do so. The United States Supreme Court has held that such a default by a would-be plaintiff creates a presumption that state procedures afford an adequate remedy and that abstention in such

17

circumstances is mandatory: "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state proceedings will afford an adequate remedy, in the absence of unambiguous authority to the contrary." Id. Any suggestion that the West Virginia Supreme Court will not be an impartial decision maker because it promulgated Rule 29 should be discounted as mere conjecture. *See,* Norfolk at n. 4. The satisfaction of the third *Younger* element is clear. Since all three elements of the *Younger* doctrine are fulfilled, this court should abstain from this action and grant the motion to dismiss.

**V.   The *Burford* abstention doctrine also mandates dismissal of this case.**

In Burford v. Sun Oil Co., 63 S.Ct. 1098, 1106-1107 (1943), the Supreme Court held that when an issue "clearly involves basic problems of [state] policy[,]... equitable discretion should be exercised to give the [state] courts the first opportunity to consider them." When the *Burford* test is met, abstention is mandatory. A "federal court sitting in equity must decline to interfere with the proceedings" in state court if (1) the case raises "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,'" or (2) the "'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" NOPSI, 109 S.Ct. at 2514 (citations omitted).

> **a.   This case raises difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar.**

The plaintiffs' claims go directly to the heart of West Virginia's Code of Judicial Conduct and Rules of Appellate Procedure. Further, they implicate significant policies related to the administration of the state's court system. The remedy sought would upset the administration of the court system in not only the case at bar, but every case that appears before the West Virginia Supreme Court. As such, abstention is appropriate.

18

**b. Exercise of federal review of the question in this case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.**

As has already been established, the public clearly has a concern with respect to the administration of the West Virginia courts. Federal review of the question presented, where the West Virginia Supreme Court has not been presented with the same question, would disrupt state efforts to establish a coherent policy with respect to the administration of its courts. Therefore, abstention is also appropriate under the second prong of the *Burford* doctrine.

## CONCLUSION

Under the *Rooker-Feldman* doctrine, this case should be dismissed for lack of subject jurisdiction. However, even if this Court finds jurisdiction proper, it should abstain from hearing the case, as abstention principles apply. Although this memorandum addressed only the *Younger* and *Burford* abstention doctrines, the Supreme Court of the United States has advised that "[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." Pennzoil, 107 S.Ct. at 1526 n.9. Therefore, dismissal pursuant to the principles of abstention is also appropriate.

WHEREFORE, for the reasons set forth in this memorandum and for such other reasons as may be apparent to this Court, the Supreme Court of Appeals of West Virginia respectfully requests that this complaint be dismissed in its entirety with prejudice, that Defendant be awarded its costs, including reasonable attorneys' fees, and such other relief deemed appropriate by this Court.

SUPREME COURT OF APPEALS OF WEST VIRGINIA

By: The Tinney Law Firm, PLLC

John H. Tinney (WV State Bar #3766)
John H. Tinney, Jr. (WV State Bar #6970)
James K. Tinney (WV State Bar #9173)
707 Virginia Street, East, 14th Floor
P. O. Box 3752
Charleston, WV 25337-3752
Telephone: (304) 720-3310
Telecopier: (304) 720-3315

MASSEY ENERGY COMPANY,

    **and**

MARFORK COAL COMPANY, INC., a
Subsidiary of Massey Energy Company,

      **Plaintiffs,**

   **v.**                            **Civil Action No. 2:06-0614**
                                          **(Judge Copenhaver)**

THE WEST VIRGINIA SUPREME COURT
OF APPEALS,

      **Defendant.**

### CERTIFICATE OF SERVICE

    I, James K. Tinney, counsel for Defendant, hereby certify that on the 28th day of August,

2006, the foregoing **"Defendant's Motion to Dismiss the Complaint"** and **"Defendant's**

**Memorandum in Support of Motion to Dismiss the Complaint"** were served upon plaintiffs

by hand delivery to counsel as follows:

                Scott Caudill, Esquire
                Caudill Law
                100 Capitol Street, Suite 1100
                Charleston, WV 25301

and by depositing true copies thereof in the United States first-class mail, postage prepaid, and
addressed to counsel as follows:

                Robert D. Luskin, Esquire
                Patton Boggs, LLP
                2550 M Street, N.W.
                Washington, DC 20037-1350

                                       James K. Tinney (WV State Bar #9173)