# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

| | |
|---|---|
| MASSEY ENERGY COMPANY,<br><br>and<br><br>MARFORK COAL COMPANY, INC., a subsidiary of Massey Energy Company,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE WEST VIRGINIA SUPREME COURT OF APPEALS<br><br>*Defendant.* | Civil Action No. 2-06-0614<br>(Judge Copenhaver)<br><br> |

RECEIVED

SEP 2 1 2006

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..............................................................................................iii

PLAINTIFFS' MEMORANDUM IN SUPPORT OF OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS............................................................1

INTRODUCTION ...........................................................................................................1

BACKGROUND ..............................................................................................................1

ARGUMENT....................................................................................................................2

I.      Plaintiffs have presented a proper federal question from which the Court
should not abstain............................................................................................3

         A.     *Rooker-Feldman* doctrine does not permit the Court to abstain from
deciding this case................................................................................3

             The Complaint does not invite the Court to "review and reject" state
court judgments ..................................................................................6

             Plaintiffs' claims are not "inextricably intertwined" with any state
court judgment....................................................................................7

             The abstention cases upon which the motion relies are not relevant
to Plaintiffs' request for future declaratory and injunctive relief.......................8

         B.     The *Younger* abstention doctrine does not permit the Court to
abstain ...............................................................................................10

             There is no ongoing state judicial proceeding in this matter ...........................11

             Preserving a non-reviewable recusal system does not implicate
important state interests. ...................................................................13

             Plaintiffs lack an adequate opportunity to raise their constitutional
claims.................................................................................................14

             The West Virginia Supreme Court is not the appropriate forum for
Plaintiffs' claims. .............................................................................15

         C.     The *Burford* abstention doctrine also does not provide a basis for
abstention in this matter....................................................................17

II.   Plaintiffs' claims are not barred by res judicata ................................................................ 18

III.  Plaintiffs state a claim upon which relief can be granted................................................. 19

CONCLUSION ...................................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases:

*Bagley v. Blankenship,*
    246 S.E.2d 99 (W. Va. 1978) ........................................................................................... 20

*Blake v. Charleston Area Medical Center, Inc.,*
    498 S.E.2d 41 (W. Va. 1997) ........................................................................................... 19

*Boring v. Buncombe County Bd. of Educ.,*
    98 F.3d 1474 (4th Cir. 1996) .......................................................................................... 20

*Buckley v. Illinois Judicial Inquiry Bd.,*
    997 F.2d 224, 227 (7th Cir. 1993) ....................................................................................9

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943) .................................................................................................. 17, 18

*Chafin v. Workman,*
    1998 WL 1297605 (S.D.W.V. 1998) .......................................................................... *passim*

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ........................................................................................................ 10

*Davani v. Virginia. Dept. of Transp.,*
    434 F.3d 712 (4th Cir. 2006) ....................................................................................... 5, 7

*District of Columbia Court of Appeals v. Feldman,*
    460 U.S. 462 (1983) ................................................................................................. *passim*

*Duby v. Moran,*
    901 F. Supp. 215 (S.D.W.V. 1995) ...................................................................................5

*Employers Resource Management Co., Inc. v. Shannon,*
    65 F.3d 1126 (4th Cir. 1995) .......................................................................................... 10

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.,*
    544 U.S. 280 (2005) ................................................................................................. *passim*

*Gibson v. Berryhill,*
    411 U.S. 564 (1973) ................................................................................................. 15, 16

*Gleichauf v. Ginsberg,*
    859 F. Supp. 229 (S.D.W.Va. 1994) .............................................................................. 10

*Guess v. Board of Medical Examiners,*
  967 F.2d 998, 1005 (4th Cir. 1992)................................................................5

*Harper v. Public Service Comm'n of WVA,*
  396 F.3d 348 (4th Cir. 2005) ...........................................................17, 18

*Hartshorn by Sade v. Heydinger,*
  647 F. Supp. 73 (S.D.W.Va. 1986) ..................................................... 10

*Hoblock v. Albany County Bd. of Elections,*
  422 F.3d 77 (2d Cir. 2005)..............................................................................7

*Howell v. Supreme Court of Texas,*
  885 F.2d 308 (5th Cir. 1989) ...................................................5, 8, 9

*Huffman v. Pursue, Ltd.,*
  420 U.S. 592 (1975) ...................................................................... 13

*Johnson v. Collins Entm't Co., Inc.,*
  199 F.3d 710 (4th Cir. 1999) ............................................................ 17

*Kugler v. Helfant,*
  421 U.S. 117 (1975) ...............................................................15, 16, 17

*Lance v. Dennis,*
  126 S.Ct. 1198 (2006) ..........................................................4, 5, 10

*Larsen v. Cigna Healthcare Mid-Atlantic,*
  224 F. Supp.2d 998 (D. Md. 2002)................................................... 10

*Leaf v. Supreme Court of the State of Wisconsin,*
  979 F.2d 589 (7th Cir. 1992) ................................................... 8, 9

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................... 13

*Marshall v. Marshall,*
  126 S.Ct. 1735 (2006) ....................................................................5

*Matsushita Elec. Indus. Co., Ltd. v. Epstein,*
  516 U.S. 367 (1996) ......................................................................... 18

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,*
  457 U.S. 423 (1982) ....................................................11, 13, 15

*Moore v. City of Asheville,*
  396 F.3d 385 (4th Cir. 2005) .......................................................... 11

*Nesses v. Shepard,*
    68 F.3d 1003 (7th Cir. 1995) ......................................................8

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
    491 U.S. 350 (1989) ...............................................7, 15, 17, 18

*Nivens v. Gilchrist,*
    319 F.3d 151 (4th Cir. 2003) ...................................................11

*Norfolk Southern Rwy. Co. v. McGraw,*
    71 Fed. Appx. 967 (4th Cir. 2003) ..................................12, 13

*Pennzoil Co. v. Texaco, Inc.,*
    481 U.S. 1 (1987) ....................................................................12

*Richmond, Fredericksburg & Potomac R. Co. v. Forst,*
    4 F.3d 244 (4th Cir. 1993) .......................................................15

*Rooker v. Fidelity Trust Co.,*
    263 U.S. 413 (1923) ........................................................*passim*

*Shaffer v. Acme Limestone Co., Inc.,*
    524 S.E.2d 688 (W. Va. 1999) ................................................15

*Suarez Corp. Indus. v. McGraw,*
    125 F.3d 222, 228 (4th Cir. 1997) ............................................5

*Telco Communications, Inc., v. Carbaugh,*
    885 F.2d 1225 (4th Cir. 1989) ................................................17

*Tumey v. Ohio,*
    273 U.S. 510 (1927) ...............................................................16

*Whitlow v. Board of Educ. of Kanawha County,*
    438 S.E.2d 15 (W. Va. 1993) ..................................................15

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ...............................................................11

*Younger v. Harris,*
    401 U.S. 37 (1971) .........................................................*passim*

**Statutes:**

28 U.S.C. § 1331 ...........................................................................3

28 U.S.C. § 1738 .........................................................................18

42 U.S.C. § 1983 ...................................................................................... 8, 12

W. Va. Code §§ 51-1-2 *et seq.* ................................................................. 14

W. Va. Code § 51-1-4 .................................................................................2

**Rules:**

4th Cir. Local R. 36(c) ............................................................................. 12

Fed. R. Civ. P. 12(b)(6) ........................................................................... 19

W. Va. R. App. P. 29 ........................................................................ *passim*

W. Va. Tr. Ct. R. 17.01 ............................................................................ 13

W. Va. Tr. Ct. R. 26.01 ............................................................................ 12

**Constitutional Provisions:**

U.S. Const. Amend. XIV ................................................................... *passim*

W. Va. Const. Art. VIII, § 3 ..................................................................... 14

W. Va. Const. Art. VIII, § 8 ............................................................... 1, 2, 20

**Other Authorities:**

Code of Judicial Conduct, Canon 3(E)(1) ...................................................2

Erwin Chemerinsky, Federal Jurisdiction § 5.2.1 (4th ed. 2003) .................3

# INTRODUCTION

Plaintiffs Massey Energy Company and Marfork Coal Company, Inc. ("Plaintiffs") have raised a straightforward issue of constitutional law: Whether Rule 29 of the West Virginia Rules of Appellate Procedure ("Rule 29") violates Plaintiffs' Fourteenth Amendment due process rights to a fair hearing before an impartial tribunal and to the appearance of justice. The Supreme Court of Appeals of West Virginia ("West Virginia Supreme Court"), through its counsel, now asks the Court to eschew its obligation to resolve this federal question, claiming incorrectly that the Plaintiffs have invited the Court to disturb state judgments or become entangled in issues reserved for state courts.

By asking the Court to deny federal review of Plaintiffs' constitutional claims, the motion to dismiss essentially seeks to foreclose *all* meaningful review of the pending federal question, because even if the West Virginia Supreme Court were inclined to review the constitutionality of its own rule – and the motion itself suggests otherwise – and even if the state court were capable of impartially considering a challenge to its own authority, there currently is no mechanism in state court to obtain such review. The motion to dismiss, therefore, rests upon the same fundamental flaw that condemns Rule 29 itself: Plaintiffs would again be left without an appropriate forum to hear the merits of their claims. Because the Complaint squarely articulates a federal question and does not ask the Court to disturb any state judgment or decide issues more appropriately left to state courts, the motion to dismiss offers no sound basis for dismissal of the Complaint and should be denied.

# BACKGROUND

Article VIII, Section 8 of the West Virginia Constitution provides the West Virginia Supreme Court with inherent rulemaking power, including the authority to "prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof[.]" *Complaint* ¶ 10. The West Virginia Legislature has also

authorized the West Virginia Supreme Court to promulgate rules governing pleading, practice and procedure in state courts. *Complaint* ¶ 11 (citing West Virginia Code § 51-1-4).

On April 3, 1996, the West Virginia Supreme Court, on its own motion and pursuant to its rulemaking power under Article VIII, Section 8, adopted Rule 29 of the Rules of Appellate Procedure. *Complaint* ¶ 12. Rule 29 provides, in pertinent part, that "[a] justice shall disqualify himself or herself, upon proper motion or *sua sponte*, in accordance with the provisions of Canon 3(E)(1) of the Code of Judicial Conduct or, when *sua sponte*, for any other reason the justice deems appropriate." *Complaint* ¶ 12 (quoting Rule 29(b)). Rule 29 does not provide for further review of an individual justice's decision to recuse or refrain from recusing. *Complaint* ¶ 14.

Because this procedural scheme, as promulgated and applied, does not permit disqualification motions to be reviewed by an impartial tribunal, instead leaving the final decision within the discretion of the justice whose own conduct is at issue, the Plaintiffs challenge Rule 29 on the grounds that it violates the Fourteenth Amendment due process clause. As the Complaint makes abundantly clear, Plaintiffs seek only prospective declaratory and injunctive relief, specifically, a declaration that Rule 29 is unconstitutional, *Complaint*, Prayer for Relief ¶¶ 1 & 2, and its natural concomitant, an amendment of the rule so that it conforms to the United States Constitution. *Complaint*, Prayer for Relief ¶ 3. The Complaint does not in any respect ask the Court to disturb judgments of the West Virginia Supreme Court or involve itself in any pending state proceedings.

## ARGUMENT

As mentioned above, the Plaintiffs ask the Court to resolve a narrowly defined issue of constitutional law: Whether Rule 29 violates their Fourteenth Amendment rights to a fair hearing before an impartial tribunal and to the appearance of justice. In asking the court to abstain from exercising the Court's indisputable jurisdiction over this federal question, the motion to dismiss rests its arguments on the false notion that the Complaint asks the Court to disturb state court judgments

or otherwise disrupt pending state judicial proceedings. Because there is nothing in the Complaint upon which to support this false premise, the motion to dismiss is without merit. Abstention in this matter is also wholly inappropriate because Plaintiffs would have no adequate opportunity to raise their constitutional claims in state court; thus, a refusal to entertain the pending constitutional question would result in a denial of constitutional review altogether. As explained more fully below, the constitutional question raised in the Complaint is precisely the type of federal issue that must be heard by a federal district court.

## I. Plaintiffs Have Presented a Proper Federal Question from which the Court Should Not Abstain.

The application of Rule 29 to disqualification motions violates the Plaintiffs' Fourteenth Amendment due process rights and, thus, Plaintiffs' challenge to Rule 29 squarely presents the Court with a core federal constitutional question. As Congress has explicitly provided, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To be sure, "[t]he existence of federal question jurisdiction is not controversial. At a minimum, no one questions a government's ability to create courts to enforce its laws." Erwin Chemerinsky, Federal Jurisdiction § 5.2.1, at 265 (4th ed. 2003). Plaintiffs are, therefore, in no way required to bring their federal constitutional claims to a West Virginia state court, even were relief available in that forum, simply because their suit implicates state actors and state policies.

### A. *Rooker-Feldman* Doctrine Does Not Permit the Court to Abstain from Deciding this Case.

The motion to dismiss rests primarily on the *Rooker-Feldman* doctrine, a very narrow exception to federal jurisdiction that is wholly inapplicable to the present matter. Under this limited doctrine, lower federal courts may not "exercis[e] jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings

commenced.'" *Lance v. Dennis*, 126 S.Ct. 1198, 1199 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (declining to apply *Rooker-Feldman*)). So narrow is this exception that the doctrine "takes its name from the only two cases in which [the Supreme Court has] applied this rule to find that a federal district court lacked jurisdiction." *Lance*, 126 S.Ct. at 1201 (declining to apply *Rooker-Feldman*).

As an initial matter, the facts of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) make plain its inapplicability to the present constitutional challenge to Rule 29. In that case, a party who lost in the Indiana Supreme Court, and failed to obtain review in the United States Supreme Court, filed an action in federal district court challenging the constitutionality of the state-court *judgment* and requesting that it be declared "null and void." *See Rooker*, 263 U.S. at 414-16. The United States Supreme Court rejected this bid to reposition the federal district court as an appellate court, characterizing the suit as "tantamount to an appeal of the Indiana Supreme Court decision, over which only [the Supreme Court] had jurisdiction[.]" *Lance*, 126 S.Ct. at 1201.

Likewise, the facts of *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) also stand in sharp contrast to Plaintiffs' constitutional challenge. In *Feldman*, the District of Columbia Court of Appeals denied the plaintiff admission to the Bar, and the plaintiff sought review of that decision in federal district court. *See id.* at 464-69. The Supreme Court held that "to the extent plaintiffs challenged the Court of Appeals decisions themselves — *as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals* — their sole avenue of review was with this Court." *Lance*, 126 S.Ct. at 1201 (emphasis added). However, "[t]o the extent that [plaintiffs] mounted *a general challenge to the constitutionality* of [the bar admission rule] . . . the District Court *did* have subject matter jurisdiction over their complaints." *Feldman*, 460 U.S. at 482-83 (emphasis added).

Disturbed by subsequent decisions of some district courts that improperly abdicated jurisdiction under this doctrine, the Supreme Court since *Feldman* has "tended to emphasize the

narrowness of the *Rooker-Feldman* rule." *Lance*, 126 S.Ct. at 1201. Indeed, in 2005, the Supreme Court emphasized that the lower courts had extended *Rooker-Feldman*'s applicability "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts[.]" *Exxon*, 544 U.S. at 283.[1] Given the Supreme Court's most recent pronouncements on this issue it is clear that the *Rooker-Feldman* doctrine applies "only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself," *Davani v. Virginia. Dept. of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006), such that the plaintiff "seek[s] review and rejection of that judgment." *Exxon*, 544 U.S. at 291. Consequently, the doctrine essentially has been all but "buri[ed]" in its final "resting place." *Marshall v. Marshall*, 126 S.Ct. 1735, 1752 (2006) (Stevens, J., concurring); *see also Davani*, 434 F.3d at 718 (holding that *Exxon* "undercuts" the Fourth Circuit's previous "broad interpretation" of *Rooker-Feldman*).

In light of the explicit Supreme Court guidance set forth above, it is clear that the *Rooker-Feldman* doctrine does not supply a basis upon which the Court may refuse to hear Plaintiffs' constitutional claims. Among the reasons precluding the application of *Rooker-Feldman* in this case are: *first*, the Plaintiffs have not asked the Court to review a state court judgment; *second*, Plaintiffs' claims are not "inextricably intertwined" with any state court judgment; and *third*, the cases cited in the motion to dismiss are inapplicable to a request for prospective declaratory and injunctive relief.

---

[1] Accordingly, the cases supporting the *Rooker-Feldman* argument, virtually all of which appear to predate *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) and *Lance v. Dennis*, 126 S.Ct. 1198 (2006), should be viewed with great caution. *See, e.g.*, Motion to Dismiss at 4 (citing *Duby v. Moran*, 901 F. Supp. 215 (S.D.W.V. 1995)); *Suarez Corp. Industries v. McGraw*, 125 F.3d 222 (4th Cir. 1997)); Motion to Dismiss at 9 (citing *Guess v. Board of Medical* Examiners, 967 F.2d 998, 1005 (4th Cir. 1992)); Motion to Dismiss at 10 (citing *Howell v. Supreme Court of Texas*, 885 F.2d 308 (5th Cir. 1989); *Chafin v. Workman*, 1998 WL 1297605 (S.D.W.V. 1998)); Motion to Dismiss at 11 (citing *Leaf v. Supreme Court of the State of Wisconsin*, 979 F.2d 589 (7th Cir. 1992)).

*The Complaint Does Not Invite the Court to "Review and Reject" State Court Judgments.*

As is obvious from the Complaint, Plaintiffs seek only a declaration that Rule 29 is

unconstitutional and an order that it be amended to conform to the Constitution, *see* Complaint,

Prayer for Relief ¶¶ 1, 2, 3; the Complaint does not in any respect ask the Court to disturb any

judgments of the West Virginia Supreme Court. The *Feldman* Court very clearly explained that such

constitutional challenges fall entirely within the jurisdiction of the federal courts, distinguishing, in

the context of that case, the difference between challenging a rule and attacking its applicability *in a*

*particular case:*

> Challenges to the constitutionality of state bar rules . . . do not necessarily require
> a United States district court to review a final state court judgment in a judicial
> proceeding. Instead, the district court may simply be asked to assess the validity
> of a rule promulgated in a nonjudicial proceeding. If this is the case, the district
> court is not reviewing a state court judicial decision . . . United States district
> courts, therefore, have subject matter jurisdiction over general challenges to state
> bar rules, promulgated by state courts in nonjudicial proceedings, which do not
> require review of a final state court judgment in a particular case.

*Feldman,* 460 U.S. at 486; *cf. Chafin v. Workman,* 1998 WL 1297605 at *4 (S.D. W. Va. 1998) (holding

that *particular decisions* not to recuse constituted adjudications). Indeed, the motion to dismiss

concedes this very point, *see* Motion to Dismiss at 5, n.2, and, thus, can sustain its argument only by

mischaracterizing the requested relief.[2]

As the Court anticipated in *Feldman,* Plaintiffs here are challenging a rule – Rule 29 – that the

West Virginia Supreme Court has "promulgated in a nonjudicial proceeding." *Feldman,* 460 U.S. at

486. In evaluating the constitutional claim, this Court will not be required to "review [ ] a final state-

court judgment in a particular case." *Id.* The Plaintiffs instead seek review of the West Virginia

Supreme Court's exercise of its rulemaking authority, not decisions reached in a judicial capacity. *See*

---

[2] Although the Complaint alleges the manner in which Rule 29 has been applied in the past,
Plaintiffs do not seek redress in this Court for any injury allegedly caused by the West Virginia
Supreme Court's previous disqualification decisions and do not ask the Court to review such
decisions.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 369-70 (1989) ("*NOPSI*"); *Feldman*, 460 U.S. at 486. In this context, Rule 29 is no different than an unconstitutional law passed by the West Virginia state legislature and enforced against the Plaintiffs by the state police. The Court has subject matter jurisdiction over this federal question, and the issue cannot be cut off from federal judicial review simply because the unconstitutional rule was promulgated by West Virginia's Supreme Court. *See Feldman*, 460 U.S. at 485 ("We have recognized that state supreme courts may act in a nonjudicial capacity").

> *Plaintiffs' Claims are not "Inextricably Intertwined" with Any State Court Judgment.*

Although the Supreme Court in *Feldman* mentioned that district courts may not entertain claims that are "inextricably intertwined" with a state court judgment, *see Feldman*, 460 U.S. at 486, the Fourth Circuit has held:

> Under *Exxon*, then, *Feldman*'s 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court.

*Davani*, 434 F.3d at 719 (internal citations omitted).[3]

In this case, deciphering whether the challenge to Rule 29 is "inextricably intertwined" with a state court judgment is unnecessary because, as we have emphasized, the Complaint does not seek redress for any alleged previous injuries whatsoever. Plaintiffs simply state that they reasonably

---

[3] The *Davani* Court illustrated this point by discussing a hypothetical case in which a plaintiff loses a state court discrimination suit against his employer. *Davani v. Virginia Dept. of Transp.*, 434 F.3d 712, 819-20 (4th Cir. 2006). "'If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.'" *Id.* at 719 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)).

expect to be unconstitutionally deprived of their due process rights in the future, such that declaratory and injunctive relief are warranted. Accordingly, the Plaintiffs' claims are not "inextricably intertwined" with any particular state court proceeding, and, thus, the *Rooker-Feldman* analysis in entirely inapposite.

> *The Abstention Cases upon which the Motion Relies Are Not Relevant to Plaintiffs' Request for Future Declaratory and Injunctive Relief.*

With excessively broad strokes, the motion to dismiss inaccurately compares this case to three pre-*Exxon* cases in which plaintiffs sought federal district court review of specific state court decisions. *See* Motion to Dismiss at 10 (discussing *Chafin*, 1998 WL 1297605; *Howell v. Supreme Court of Texas*, 885 F.2d 308 (5th Cir. 1989); *Leaf v. Supreme Court of the State of Wisconsin*, 979 F.2d 589 (7th Cir. 1992)). Indeed, it was because plaintiffs in these cases sought review of specific state court judgments that federal courts appropriately abstained from deciding the merits of the plaintiffs' claims. It is also precisely for that reason that these decisions are wholly inapplicable to the matter currently before this Court.

In *Chafin*, the plaintiff sought "*to set aside* the decisions of Justices Margaret Workman and Larry Starcher." *Chafin*, 1998 WL 1297605 at *5 (emphasis added). As the Court explained, "[t]o grant the plaintiff the relief that he requests, the court effectively would have to undo the decision of the West Virginia Supreme Court of Appeals, which *Rooker-Feldman* expressly forbids." *Id.* at *6. Discussing a similar case previously before the Seventh Circuit, the *Chafin* Court explained that the "critical distinction between [*Chafin*] and *Nesses* is that the plaintiff [in *Chafin*] seeks injunctive and declaratory relief, while the plaintiff in *Nesses* sought monetary damages." *Chafin*, 1998 WL 1297605 at *6 (citing *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), in which plaintiff sought damages under 42 U.S.C. § 1983, but sought no injunctive relief with respect to a specific recusal decision). Unlike *Chafin*, "[t]o grant Mr. Nesses the relief that he sought, the court there needed only to find that the defendants violated Mr. Nesses' constitutional rights and that the violation did him harm." *Chafin*,

1998 WL 1297605 at *6. Thus, for the reasons the *Chafin* Court itself articulated, this opinion is wholly inapplicable here.

In *Howell v. Supreme Court of Texas*, the Court applied *Rooker-Feldman* where the plaintiff filed a civil rights action that challenged the denial of his disqualification motions and the constitutionality of the Texas recusal rule. Unlike *Howell*, however, Plaintiffs here do not challenge the denial of any specific disqualification decision. With respect to the constitutionality of the Texas recusal rule, the *Howell* Court held that because Howell *did* raise his constitutional claim in the state court, allowing a new challenge in federal district court would necessarily require review of a final state court judgment. *See Howell*, 885 F.2d at 311 ("All parties to this proceeding agree that Howell presented the claims he raises in this proceeding to the Texas Supreme Court . . . [he] may not now reopen his challenge in a new proceeding in federal district court."). Similarly, in *Leaf*, the Seventh Circuit held that the plaintiff's independent constitutional claims regarding the state attorney disciplinary proceedings were barred by *Rooker-Feldman*, because "Leaf raised her general constitutional attacks in the Wisconsin proceedings. Therefore, Leaf already has a state court judgment on these facial attacks," and the only avenue of appeal was the United States Supreme Court, not a federal district court. *Leaf*, 979 F.2d at 600. *See also Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224, 227 (7th Cir. 1993) (distinguishing *Leaf* because plaintiff Buckley sought only to "clear away the rule").

Unlike *Leaf* and *Howell*, plaintiffs here did not raise their constitutional claims in previous state court proceedings. In addition to this obvious factual difference, the logic of *Howell* and *Leaf* is obsolete in the wake of *Exxon*. As the Supreme Court has made clear, disposition of a federal action, once any state-court adjudications are complete, is governed by typical preclusion law. However, conflating *Rooker-Feldman* with principles of preclusion would "supplant Congress' mandate . . . turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Lance,* 126 S.Ct. at 1202-03.

In view of the above analysis, it is clear that the *Rooker-Feldman* doctrine applies only in those "limited circumstances" involving "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and *inviting district court review and rejection of those judgments.*" *Exxon,* 544 U.S. at 284 & 291 (emphasis added). In other words, the doctrine applies only where "a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance,* 126 S.Ct. at 1202. Because the plaintiffs in this case do not seek a "review and rejection" of previous state court recusal decisions or judgments, *Rooker-Feldman* is inapplicable here.

## B. The *Younger* Abstention Doctrine Does Not Permit the Court to Abstain.

A federal court's obligation to hear matters within its congressionally-conferred jurisdiction is "virtually unflagging," and consideration of any abstention issue begins with the basic proposition that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 & 817 (1976). Consequently, a court must approach abstention questions "beginning with a presumption against abstention and requiring a clear justification before exercising discretion to abstain." *Gleichauf v. Ginsberg,* 859 F. Supp. 229, 232 (S.D.W.Va. 1994) (quoting *Hartshorn by Sade v. Heydinger,* 647 F. Supp. 73, 75 (S.D.W.Va. 1986)). Indeed, the Supreme Court has cautioned that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," *Colorado River,* 424 U.S. at 813. *See also Employers Resource Management Co., Inc. v. Shannon,* 65 F.3d 1126, 1134 (4th Cir. 1995); *Larsen v. Cigna Healthcare Mid-Atlantic,* 224 F. Supp.2d 998, 1006 (D. Md. 2002).

*Younger* doctrine counsels that a federal court should abstain from hearing a case brought under federal question jurisdiction only in the rare circumstance where there is "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity

for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005) (citing *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). As detailed below, all three factors are missing here.

### There Is No Ongoing State Judicial Proceeding in this Matter.

The motion to dismiss falsely states that "Plaintiffs allege that they are seeking relief in cases currently pending before the West Virginia Supreme Court[.]" Motion to Dismiss at 15. As is clear from the plain terms of the Complaint, Plaintiffs seek only prospective declaratory and injunctive relief with respect to the operation of Rule 29. They do not seek relief from pending or past judgments or recusal decisions. As the Fourth Circuit reiterated in the context of a criminal case, where a plaintiff seeks "prospective relief against the threat of future prosecution and [does] not seek to 'have his record expunged, or to annul any collateral effects' of his conviction, . . . *Younger* [does] not require the federal court to abstain even though the plaintiff had failed to seek review of his conviction in the state appellate court." *Moore*, 396 F.3d at 396 (quoting *Wooley v. Maynard*, 430 U.S. 705, 710-11 (1977)). Although the *Moore* Court ultimately abstained, it did so only because it rejected the plaintiff's characterization of the complaint as "wholly prospective":

> [T]he complaint also seeks to annul the effects of the prior state administrative proceedings to the extent that [the plaintiff] seeks a declaratory judgment that the City of Asheville unconstitutionally applied its ordinances to cite him *in the past* and demands direct and consequential monetary damages from the City for its [past] actions.

*Moore*, 396 F.3d at 396 (emphasis added). In contrast, here, Plaintiffs seek neither a declaratory judgment as to past West Virginia Supreme Court judgments, nor any other relief whatsoever for previous judgments or recusal decisions.

Because the Plaintiffs' request for relief is so limited in nature, this case also contrasts sharply with another case upon which the motion to dismiss relies heavily, the Fourth Circuit's

unpublished opinion in *Norfolk Southern Rwy. Co. v. McGraw*, 71 Fed. Appx. 967 (4th Cir. 2003) (unpublished).[4]  In *Norfolk Southern*, the plaintiff railroads brought suit under 42 U.S.C. § 1983, requesting a declaratory judgment that the operation of a state trial court rule and its application in several thousand pending asbestos cases against the railroads violated the railroads' due process rights.  Specifically, the plaintiffs sought, in relevant part, "a declaratory judgment that the operation of West Virginia Trial Court Rule 26.01 *and its application in pending asbestos litigation* against the Railroads violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Id.* at 968 (emphasis added).  Unsurprisingly, the Court explained, "[a] favorable ruling in the district court would interfere with and disrupt [thousands of] ongoing proceedings in which the challenged rule has been applied." *Id.* at 970.  By contrast, the Plaintiffs in the matter now before the Court seek no such relief with respect to ongoing cases.  In addition, a declaration regarding Rule 29 would not cause the type of massive disruption of pending state proceedings that so troubled the *Norfolk* Court.

Similarly, in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), Texaco, desiring to suspend a state court judgment pending appeal, but recognizing the difficulty of posting a large bond, filed suit in federal district court to seek an injunction *barring Pennzoil from attempting to enforce a state court judgment* on the grounds that the bond requirement violated the company's due process and equal protection rights. *Pennzoil*, 481 U.S. at 5-6.  With respect to Texaco's argument that there was no ongoing judicial proceeding, the Court pointed to "the lawsuit out of which Texaco's constitutional claims arose," which was then "pending before a Texas Court of Appeals in Houston, Texas." *Id.* at 14, n.13.  In contrast, here, the Plaintiffs' claims do not arise from any pending cases, nor do Plaintiffs

---

[4]  Use of this unpublished decision in the motion to dismiss contravenes Fourth Circuit Local Rule 36(c). *See* 4th Cir. Local R. 36(c) (instructing that citation to unpublished dispositions in district courts briefs within this Circuit is "disfavored," except to establish *res judicata*, estoppel, or law of case).

seek to bar enforcement of any state judgment or recusal decision whatsoever.[5]

*Preserving a Non-Reviewable Recusal System Does Not Implicate Important State Interests.*

When the Supreme Court extended the *Younger* doctrine beyond the criminal context to certain limited civil actions, the Court was mindful that the original intent of the doctrine was to protect state interests presented in criminal prosecutions. Accordingly, the Court has emphasized that the *Younger* doctrine applies in civil cases only where "important state interests are at stake." *See Middlesex*, 457 U.S. at 432; *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975) (finding that obscenity regulation implicated important state interests).

While West Virginia obviously has important interests in "administering certain aspects of [its] judicial systems," *Pennzoil*, 481 U.S. at 12-13, the state cannot have any interest in maintaining its unconstitutional judicial disqualification procedure. The motion to dismiss has not convincingly argued otherwise, resorting instead to an exaggerated parade of horrors that would allegedly result from changes to the system.[6] *See* Motion to Dismiss at 16-17 ("Such a practice would wreck [sic] havoc upon the administration of the state's courts."). While we are reluctant to suggest that havoc should be wreaked — even to conform to the dictates of the Constitution — one need look no further than West Virginia's own trial court rules to dispel such outlandish speculation. Under the procedure that governs West Virginia's lower courts, the Chief Justice is authorized ultimately to review and decide the merits of disqualification motions. *See* West Virginia Trial Rule 17.01.

---

[5] It would be improper as a matter of basic fairness to foreclose the Plaintiffs from bringing claims in a federal judicial forum simply because Plaintiffs, as large businesses, naturally appear before the West Virginia courts on a frequent and continual basis. Applying *Younger* abstention would create an impossible Catch-22: the only litigants with standing — i.e., "actual or imminent" injury pursuant to *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) — to bring a federal constitutional action regarding Rule 29 are unable to do so because their injury at the hands of the West Virginia Supreme Court is *too* imminent.

[6] In contrast, the rule at issue in *Norfolk Southern* was promulgated to deal with the far more important "elephantine mass of asbestos cases that threatened to cripple the common law system of adjudication, if for no other reason than the sheer volume of cases." *Norfolk Southern Rwy. Co. v. McGraw*, 71 Fed. Appx. 967, 971 (4th Cir. 2003) (internal quotation omitted).

Moreover, the appellate rules governing West Virginia Supreme Court absences themselves already provide for the appointment of substitute justices from the ranks of senior justices and circuit judges. *See* Rule 29(g).

To be sure, any challenge to the federal constitutionality of a state law, rule, or practice necessarily implicates state interests, and we would be foolish to argue otherwise. But since the adoption of the Fourteenth Amendment, the states have been constrained from violating the due process rights of their citizens, and the narrow contours of *Younger* abstention cannot be transformed into a trump card to defeat federal court review of federal constitutional claims.

*Plaintiffs Lack an Adequate Opportunity To Raise Their Constitutional Claims.*

Finally, there is no pending litigation that provides Plaintiffs with an adequate opportunity to raise their constitutional claims. Indeed, the absence of an adequate opportunity to mount Plaintiffs' constitutional challenge stems from the same source of the constitutional infirmities at the center of this case: Rule 29 itself, which provides no mechanism by which to bring a challenge. Any such constitutional challenge to the rule would presumably occur within the context of an actual disqualification decision, the substance of which, by virtue of Rule 29, is reviewed only by the justice who is the subject of the motion. Consequently, full review of Plaintiffs' claims is unavailable.

Apart from the operation of Rule 29, principles of West Virginia jurisprudence also demonstrate the lack of any opportunity to raise a constitutional challenge to the rule. As a preliminary matter, the lower state courts in West Virginia have not been granted power to review appellate rules. *See generally* W. Va. Const. Art. VIII; W. Va. Code §§ 51-1-2 *et seq.* Indeed, the "[l]ower state courts in West Virginia . . . have no power to invalidate rules promulgated by the State Supreme Court; the West Virginia Constitution and West Virginia statutory law place that power exclusively in the State Supreme Court's hands." *Chafin*, 1998 WL 1297605 at *7. Yet, as the West Virginia Supreme Court has also stated, "[o]ur general rule is that nonjurisdictional questions not

raised at the circuit court level, but raised for the first time on appeal, will not be considered."

*Shaffer v. Acme Limestone Co., Inc.,* 524 S.E.2d 688, 704, n.20 (W. Va. 1999). As the West Virginia Supreme Court has explained:

> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal . . . Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

*Id.* (citing *Whitlow v. Board of Educ. of Kanawha County,* 438 S.E.2d 15, 18 (W. Va. 1993)).[7]

Given this straightforward authority, it is no surprise that the motion to dismiss cites no West Virginia cases in which the West Virginia Supreme Court assented to any litigant's request to pass judgment on the basic constitutionality of Rule 29, as opposed to its application in a *particular instance.* Indeed, until the West Virginia Supreme Court authoritatively announces the procedural path through which such a claim is possible – and the motion's one-sentence, unsupported assertion is hardly enough – the Court is left only with the "general" principles articulated in *Whitlow* and *Shaffer,* neither of which provides an adequate forum for Plaintiffs' constitutional claims.

*The West Virginia Supreme Court is Not the Appropriate Forum for Plaintiffs' Claims.*

The Supreme Court has repeatedly emphasized since *Younger's* inception that "[a]bstention is not necessarily appropriate in every civil action that meets the formal requirements" of *Younger. Richmond, Fredericksburg & Potomac R. Co. v. Forst,* 4 F.3d 244, 251 (4th Cir. 1993). *See also NOPSI,* 491 U.S. at 368; *Middlesex,* 457 U.S. at 431. Indeed, the Supreme Court's decisions in *Gibson v. Berryhill,* 411 U.S. 564 (1973) and *Kugler v. Helfant,* 421 U.S. 117 (1975), further restrict the range of cases that appropriately fall within the already narrow boundaries drawn by *Younger.*

In *Gibson,* the plaintiffs, who were licensed optometrists, brought an action in federal district

---

[7] Together, the practical effect of these rules is that Plaintiffs cannot receive in state court the full benefits of an adjudicatory system, which includes a hearing before a trial court and, thus, factfinding and the "wisdom" of the lower court. *See Whitlow v. Board of Educ. of Kanawha County,* 438 S.E.2d 15, 18 (W. Va. 1993).

court seeking an injunction to halt proceedings before a state board of optometry. The board, which consisted entirely of optometrists who were not employed by others, brought proceedings to rescind the licenses of all optometrists who worked for others. The district court issued an injunction because the board's conflict of interest precluded a fair determination. *Gibson*, 411 U.S. at 578-81. In upholding the district court, the Supreme Court held: "It is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Id.* at 579 (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)). Two years later the Supreme Court further clarified *Younger*'s "extraordinary circumstances" exception where a state court judge alleged in federal court that members of the state supreme court were so involved in his case that an unbiased hearing was impossible. *Kugler*, 421 U.S. at 119. Although the court declined to find the existence of bias warranting federal jurisdiction, it did so only because of recent membership changes on the state supreme court, as well as the state's "mandatory" recusal rules for judges personally interested in the action. *Id.* at 127-28.

In light of *Gibson* and *Kugler*, it is clear that abstention in this case is wholly inappropriate. Here, it is the rulemaking authority of the West Virginia Supreme Court itself that is at issue. Consequently, even if there were a procedural framework within which to raise Plaintiffs' constitutional claims in state court, abstention would force the Plaintiffs to raise their claims in a setting in which the West Virginia Supreme Court would appear as both defendant and decisionmaker. To make matters worse, the motion to dismiss shows unmistakably that the West Virginia Supreme Court has prejudged the issue entirely. *See* Motion to Dismiss at 16-17 (speculating about an array of hypothetical problems that would ensue if Plaintiffs' relief were granted). Indeed, before the filing of even a single brief on the constitutional question at the heart of this case, the West Virginia Supreme Court has anxiously assured the Court and Plaintiffs:

> Without much effort, we can imagine that adversaries appearing before the court
> would institute ["mini-trial"] hearings wherever they suspect certain justices may

not favor their position. Such a practice would wreck [sic] havoc upon the administration of the state's courts. Such a practice would degrade the oaths and Code of Judicial Conduct applicable to every judge in West Virginia, while adding an additional layer of 'pre-litigation' to the judicial process[.]

*Id.* at 17.

These remarks underscore the fundamental problem running throughout this case: Justice is rarely, if ever, served when the king sits in judgment of himself. Furthermore, even if the Plaintiffs were permitted to raise their claims before the Supreme Court, they would apparently be denied the right of a trial below, forcing them to forgo the many benefits of appearing before a fact-finding court. These are precisely the sort of "extraordinary circumstances" that "render the state court incapable of fairly and fully adjudicating the federal issues before it[.]" *Kugler*, 421 U.S. at 124. In short, applying the *Younger* doctrine in this case would "convert[ ] a doctrine of comity into a blanket permission for the prolonged commission of unconstitutional acts." *Telco Communications, Inc., v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989). Plainly, this is not a case in which a federal court should forfeit its proper subject matter jurisdiction.

### C. The *Burford* Abstention Doctrine Also Does Not Provide a Basis for Abstention in this Matter.

The motion to dismiss also rests upon a flawed effort to avoid the merits of this case under the *Burford* abstention doctrine. The *Burford* abstention doctrine, however, applies only in cases that "(1) [ ] present difficult questions of state law or (2) whose adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy" in important areas of public concern. *Harper v. Public Service Comm'n of WVA*, 396 F.3d 348, 358 (4th Cir. 2005) (citing *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 719 (4th Cir. 1999) (internal quotations omitted)); *NOPSI*, 491 U.S. at 361. In short, "*Burford* is concerned with protecting complex state administrative processes from undue federal interference[.]" *NOPSI*, 491 U.S. at 362.

In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Sun Oil Company instituted a federal action

challenging the decision of the Texas Railroad Commission to allow drilling in a certain area of Texas. The Commission issued drilling permits under a sprawling regulatory system established to conserve the state's oil and gas resources. Because "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy, are the inevitable product of [the] double system of review" created by the exercise of federal jurisdiction, the Court concluded that "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Burford v. Sun Oil Co.*, 319 U.S. 315, 327 & 334 (1943). The Court also noted that allowing federal intervention "would lead to intolerable confusion." *Id.* at 327 (internal quotation omitted).

*Burford* itself highlights what is lacking in the matter now before the Court. There is nothing complex about the framework of Rule 29; the Court's review of Rule 29 will not disrupt any state effort to establish a coherent procedure for the disqualification of jurists; and determining whether Rule 29 unconstitutionally burdens Plaintiffs' due process rights under the Fourteenth Amendment does not "require the district court to pass on any 'difficult questions of state law.'" *Harper*, 396 F.3d at 358. Indeed, this case scarcely warrants comparison to the complex legal and policy issues surrounding a state drilling regulatory system (*Burford*) or a city council's allocations of wholesale power (*NOPSI*). The alarmingly expansive interpretation of *Burford* set forth in the motion to dismiss – which is unsupported by any applicable precedent – would literally envelop any case involving a state entity and, thus, insulate all state action from federal constitutional review. Neither *Burford* nor any subsequent federal precedent anticipates such a result.

## II. Plaintiffs' Claims are Not Barred by Res Judicata

As the motion to dismiss correctly states, preclusion in federal litigation following a judgment in state court depends upon the Full Faith and Credit Clause, 28 U.S.C. § 1738, which requires federal courts to give state court judgments the same effect that the rendering state would provide. *See Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 369 (1996). Before looking to

the law of West Virginia, however, Plaintiffs note as a preliminary matter that, as stressed throughout this brief, the Complaint does not seek review of *any* state judgment or recusal decision whatsoever. Instead, Plaintiffs seek review of a rule promulgated by the West Virginia Supreme Court in its rulemaking – rather than judicial – capacity. The concept of preclusion, therefore, is completely alien to this case.

Even if the *res judicata* doctrine had any relevance here, West Virginia law holds that before a suit may be barred on this basis, three elements must be satisfied:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Blake v. Charleston Area Medical Center, Inc.*, 498 S.E.2d 41, 49 (W. Va. 1997). Apart from the lack of any merits adjudication as to the constitutionality of Rule 29, the West Virginia Supreme Court cannot possibly argue that it has been in privity with any of Plaintiffs' opponents in previous litigation. In addition, the West Virginia Supreme Court has not examined the precise issue before this Court and, as aforementioned, plaintiffs could not have raised it. Thus, the preclusion argument is without foundation, and is also at odds with the assertion that Plaintiffs may bring their claims before the West Virginia Supreme Court at any time. *See* Motion to Dismiss at 17.

### III.  Plaintiffs State A Claim Upon Which Relief Can Be Granted.

As the Court is well aware, "a motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. It is only in the unusual case where the complaint on its face reveals some insuperable bar to relief that dismissal under Rule 12(b)(6) is warranted." *Boring v. Buncombe County Bd. of Educ.*, 98 F.3d 1474, 1479 (4th Cir. 1996) (internal quotations omitted). The motion to dismiss contends that because the West Virginia Supreme Court "lacks the constitutional power to

*summarily disqualify a justice from a particular case*" the West Virginia Supreme Court is prohibited from revising Rule 29. *See* Motion to Dismiss at 12 (citing *Bagley v. Blankenship*, 246 S.E.2d 99, 107 (W. Va. 1978) (emphasis added)).

As previously mentioned, Article VIII, Section 8 of the West Virginia Constitution grants the West Virginia Supreme Court with inherent rulemaking power, including the authority to "prescribe, adopt, promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates, along with sanctions and penalties for any violation thereof[.]" Although the court in *Bagley* held that it was powerless to "disqualify summarily a justice from participation in a particular case as contended by counsel for respondent," *Bagley*, 246 S.E.2d at 107, it did not hold that the West Virginia Supreme Court lacked the power to promulgate or amend rules that would require impartial review of an individual justice's recusal decision. *See id.* (holding that the court was constitutionally prohibited from granting respondent's motion to overturn a justice's denial of respondent's recusal motion against him).

In the final analysis, neither the West Virginia Constitution nor any interpretation thereof can prohibit the West Virginia Supreme Court from observing the rights guaranteed by the Fourteenth Amendment to the United States Constitution. Were it otherwise, states could always avoid the reach of the Fourteenth Amendment by simply framing their respective state constitutions in a manner that would either prohibit adherence to the United States Constitution or authorize conduct that tramples upon constitutional rights. Because neither logic nor law supports such a result, the motion to dismiss should be denied.

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court deny the Motion to Dismiss.

Dated: September 21, 2006

Respectfully Submitted,

Robert D. Luskin
Patrick J. Slevin
Kathryn Biber Chen
PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, D.C. 20037-1350
Telephone: (202) 457-6190
Facsimile: (202) 457-6315
rluskin@pattonboggs.com

Scott Caudill
CAUDILL LAW
100 Capitol Street, Suite 1100
Charleston, WV 25301
Phone: (304) 344-3510
scottcaudill@wvdsl.net

COUNSEL TO MASSEY ENERGY
COMPANY AND MARFORK COAL
COMPANY, INC.

| | |
|---|---|
| MASSEY ENERGY COMPANY, <br><br> and <br><br> MARFORK COAL COMPANY, INC., a subsidiary of Massey Energy Company, <br><br> *Plaintiffs,* <br> v. <br><br> THE WEST VIRGINIA SUPREME COURT OF APPEALS <br><br> *Defendant.* | Civil Action No. 2-06-0614 <br> (Judge Copenhaver) |

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing <u>Plaintiffs' Opposition to Defendant's Motion to Dismiss</u> and <u>Plaintiffs' Memorandum in Support of Opposition to Defendant's Motion to Dismiss</u> made upon opposing counsel by hand delivery to the following person at the following address, on <u>September 21, 2006</u>:

James K. Tinney, Esq.
The Tinney Law Firm, PLLC
Chase Tower, 14th Floor
707 Virginia Street, East
Charleston, WV 25301
*Counsel for Defendant*

*S Caudill*
_____
Scott Caudill (W.Va. #8961)
CAUDILL LAW
100 Capitol Street, Suite 1100
Charleston, WV 25301
*Counsel for Plaintiffs*