UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MASSEY ENERGY COMPANY and
MARFORK COAL COMPANY, INC.,

       Plaintiffs

v.                            Civil Action No. 2:06-0614

THE SUPREME COURT OF APPEALS
OF WEST VIRGINIA,

       Defendant

MEMORANDUM OPINION AND ORDER

       Pending are (1) defendant's motion to dismiss, filed August 28, 2006, and (2) plaintiffs' motion for leave to file a surreply on the issue of standing, filed October 12, 2006.[1]

       The court ORDERS that the motion for leave to file a surreply be, and it hereby is, granted.  The court further ORDERS that the proposed surreply be, and it hereby is, ORDERED filed today.

---

       [1]The final briefing in the matter was received January 12, 2007.  The court also notes the respondent court's request that the caption be altered to reflect its proper designation, namely, the Supreme Court of Appeals of West Virginia.  The Clerk is directed to so amend the style.

I.

Plaintiff Massey Energy Company ("Massey") is a
Delaware corporation that owns, and operates through, subsidiary
mines located throughout Virginia, West Virginia, and Kentucky.
(Compl. ¶ 7).  Plaintiff Marfork Coal Company Inc. ("Marfork") is
a Massey subsidiary located in Raleigh County.  (Id. ¶ 8).

Plaintiffs have appeared before the defendant Supreme
Court of Appeals of West Virginia on numerous occasions and
anticipate future appearances there.  (Id.) At the time this
civil action was filed, Massey and Marfork were party to at least
twelve and six actions respectively in the circuit courts of West
Virginia.  (Id.)

Article VIII, section 8 of the West Virginia
Constitution authorizes the supreme court of appeals to
"prescribe, adopt, promulgate and amend rules prescribing a
judicial code of ethics, and a code of regulations and standards
of conduct and performances for justices, judges and magistrates,
along with sanctions and penalties for any violation thereof . .
. ."     W. Va. Const. Art. 8, § 8.  There is also statutory
authority permitting the supreme court of appeals to promulgate
procedural rules.  W. Va. Code § 51-1-4 ("The supreme court of

2

appeals may, from time to time, make and promulgate general rules
and regulations governing pleading, practice and procedure in
such court and in all other courts of record of this State.").

On April 3, 1996, the Supreme Court of Appeals adopted
Rule 29 of the West Virginia Rules of Appellate Procedure, a
provision governing motions to disqualify member justices.  Rule
29 provides pertinently as follows:

> (b) Grounds for Disqualification. A justice shall
> disqualify himself or herself, upon proper motion or
> sua sponte, in accordance with the provisions of Canon
> 3(E)(1)[2] of the Code of Judicial Conduct or, when sua
> sponte, for any other reason the justice deems
> appropriate.
>
>         . . . .
>
> (f) Decision on Motion. The justice shall promptly
> notify the Clerk of the Supreme Court of his or her
> decision on the motion for disqualification and the
> Clerk of the Supreme Court shall promptly notify the
> other justices and the parties of such decision.

W. Va. R. App. P. 29(b) and (f).

---

[2]Canon 3(E)(1) of the West Virginia Code of Judicial Conduct
provides pertinently as follows:

> (1) A judge shall disqualify himself or herself in a
> proceeding in which the judge's impartiality might
> reasonably be questioned, including but not limited to
> instances where . . . the judge has a personal bias or
> prejudice concerning a party or a party's lawyer . . .
> .

Can. 3(E)(1).

3

Plaintiffs assert that Rule 29 "provides judicial review of disqualification motions only by the justice or justices who are the subject of such motions; it does not provide for a fair hearing of such motions by an impartial judicial tribunal and does not provide for review by an impartial tribunal of the decisions of the interested justices."  (Compl. ¶ 14). Plaintiffs contend their concerns are justified inasmuch as "one member . . . , Justice Larry Starcher, has shown a strong personal bias against . . . [Massey and its Chairman and Chief Executive Officer, Don Blankenship]."  (Id. ¶ 18).

Plaintiffs allege in great detail, not reproduced here, the putative, "numerous instances . . . in which Justice Starcher has violated Canon 3(E)(1) of the Code of Judicial Conduct by expressing publicly a personal bias against" them.  (Id. ¶ 19). They note that, despite his publicized disdain for Massey and Mr. Blankenship, Justice Starcher has refused, without explanation, Massey's and Marfork's recusal requests in two separate cases.

Plaintiffs' complaint alleges two Fourteenth Amendment claims using 42 U.S.C. § 1983, which are summed up in paragraphs 16 and 17 of the complaint:

> 16.  Defendant['s] . . . promulgation, construction and application of Rule 29 constitutes a deprivation of the rights, privileges, and immunities secured by the

4

Constitution and laws of the United States to
Plaintiffs.  Specifically, Rule 29 violates Plaintiffs'
rights to a fair hearing before an impartial tribunal
under the Due Process Clause of the Fourteenth
Amendment to the United States Constitution insofar as
the rule, as promulgated and applied, permits a justice
of the West Virginia Supreme Court who is the subject
of a disqualification motion exclusively to determine
the merits of that motion and does not provide for
review of such motion by an impartial judicial officer.

17.  Defendant['s] promulgation, construction and
application of Rule 29 constitutes a deprivation of the
rights, privileges, and immunities secured by the
Constitution and laws of the United States to
Plaintiffs.  Specifically, Rule 29 violates Plaintiffs'
rights to the appearance of justice under the Due
Process Clause of the Fourteenth Amendment to the
United States Constitution insofar as the rule, as
promulgated and applied, permits a justice of the West
Virginia Supreme Court who is the subject of a
disqualification motion exclusively to determine the
merits of that motion and does not provide for review
of such motion by an impartial judicial officer.
Defendant['s] promulgation, construction and
application of Rule 29 undermines public confidence in
the judiciary and raises the inference of bias.

(Id. ¶¶ 16-17; see also id. ¶¶ 31-38).


Plaintiffs seek a declaration that Rule 29 is facially

unconstitutional, as violative of the Due Process Clause of the

Fourteenth Amendment, and further invalid as construed and

applied.  (Id. prayer for relief).  They additionally seek an

order directing the Supreme Court of Appeals to amend Rule 29 "so

that it provides for a fair hearing before an impartial tribunal

of all motions for disqualification . . . ."  (Id.)

5

The Supreme Court of Appeals moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending (1) the court lacks subject matter jurisdiction in view of the rules prescribed by <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), and their progeny, (2) the claims are barred by <u>res</u> <u>judicata</u>, (3) the claims stated are ones for which no relief can be granted, and (4) both <u>Younger</u> and <u>Burford</u> abstention counsel in favor of dismissal in favor of state court resolution of the claims stated.  A standing issue developed late in the briefing as well.  The court addresses that issue to the extent possible based upon the current record.[3]

---

[3]Although some references in the memorandum in support and plaintiffs' opposition brief touch on the issue of standing, serious development of the issue was not undertaken until the reply and the sur-reply briefing arrived.  Additionally, the Supreme Court of Appeals' response in opposition to plaintiffs' motion for leave to file a surreply did not include a response to the proposed surreply, requesting instead that "should the Court allow the Plaintiffs to file the surreply, the Defendant would request an opportunity to address several additional misstatements contained therein."  (Def.'s Resp. in Oppos. at 4). In view of the court's resolution of the standing issue, those further arguments may be made at the summary judgment stage of the case.

II.

A.   Governing Standards


A motion to dismiss pursuant to Rule 12(b)(6) should not be granted "unless it appears certain that the plaintiff can prove no set of facts which would support . . . [his] claim and would entitle . . . [him] to relief." Greenhouse v. MCG Capital Corp., 392 F.3d 650, 655 (4th Cir. 2004) (quoting Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). Additionally, the "complaint [is viewed] in the light most favorable to the plaintiff and . . . all well-pleaded allegations" are accepted as true. South Carolina Dept. of Health & Environ. Control v. Commerce & Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). Further, beyond the facts alleged, the court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

A complaint need not "make a case" against a defendant or "forecast evidence sufficient to prove an element" of the claim. Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th

Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)).  Rather, it need only "allege facts sufficient to state elements" of the claim.  <u>Id.</u>; <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003).[4]

---

[4]In <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1963 (2007), the Supreme Court "address[ed] the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct . . . ."  <u>Id.</u>  Although so limited, the majority opinion nevertheless contains broader language some believe to be in tension with settled notice pleading standards arising from <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), and its progeny:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .  The dissent greatly oversimplifies matters by suggesting that the Federal Rules somehow dispensed with the pleading of facts altogether.  While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

<u>Twombly</u>, 127 S. Ct. at 1964-65 and n. 3 (citations omitted).  The court leaves for another day the question concerning <u>Twombly</u>'s impact upon the well-settled doctrine of notice pleading.  Plaintiffs' complaint supplies the minimal factual detail that <u>Twombly</u> might be read to require.

A motion to dismiss for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1) may be presented in one of
two ways.  United States v. North Carolina, 180 F.3d 574, 580
(4th Cir. 1999).  Typically, where the challenge to the complaint
involves a failure to allege facts upon which subject matter
jurisdiction can be based, the facts alleged by plaintiff are
assumed to be true, giving him the same procedural protection as
he would be accorded by Rule 12(b)(6).  Adams v. Bain, 697 F.2d
1213, 1219 (4th Cir. 1982).

B.   Analysis

1.   Standing

The Supreme Court recently summarized the underpinnings
of the Article III standing requirement:

> Article III of the Constitution limits federal-court
> jurisdiction to "Cases" and "Controversies."  Those two
> words confine "the business of federal courts to
> questions presented in an adversary context and in a
> form historically viewed as capable of resolution
> through the judicial process." Flast v. Cohen, 392 U.S.
> 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). It is
> therefore familiar learning that no justiciable
> "controversy" exists when parties seek adjudication of
> a political question, Luther v. Borden, 7 How. 1, 12
> L.Ed. 581 (1849), when they ask for an advisory
> opinion, Hayburn's Case, 2 Dall. 409, 1 L.Ed. 436
> (1792), see also Clinton v. Jones, 520 U.S. 681, 700,

9

n. 33, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997), or when
the question sought to be adjudicated has been mooted
by subsequent developments, <u>California v. San Pablo &
Tulare R. Co.</u>, 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747
(1893).

        . . . .

At bottom, "the gist of the question of standing" is
whether petitioners have "such a personal stake in the
outcome of the controversy as to assure that concrete
adverseness which sharpens the presentation of issues
upon which the court so largely depends for
illumination." <u>Baker v. Carr</u>, 369 U.S. 186, 204, 82
S.Ct. 691, 7 L.Ed.2d 663 (1962).

<u>Massachusetts v. Environmental Protection Agency</u>, 127 S. Ct.

1438, 1452 (2007).  The Supreme Court then explained the three

settled prerequisites for standing:

To ensure the proper adversarial presentation, <u>Lujan</u>
holds that a litigant must demonstrate that it has [1]
suffered a concrete and particularized injury that is
either actual or imminent, [2] that the injury is
fairly traceable to the defendant, and [3] that it is
likely that a favorable decision will redress that
injury.

<u>Id.</u> at 1453.

        Regarding the first element, our court of appeals has

observed as follows:

To be sure, the alleged injury must, for standing
purposes, be "concrete and particularized" and "actual
or imminent, not conjectural or hypothetical." <u>Lujan</u>,
504 U.S. at 560, 112 S.Ct. 2130.  But "one does not
have to await the consummation of threatened injury to
obtain preventative relief.  If the injury is
certainly impending, that is enough." <u>Friends of The Earth, Inc.
v. Gaston Copper Recycling Corp.</u>, 204 F.3d 149, 160

10

>       (4th Cir.2000) (quoting **Babbitt v. United Farm Workers
>       Nat'l Union**, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L.
>       Ed.2d 895 (1979)).

**Retail Industry Leaders Ass' v. Fielder**, 475 F.3d 180, 186 (4th

Cir. 2007).

        Regarding the procedure for handling such a motion, our

court of appeals has additionally observed as follows:

>       [A plaintiff] . . . bear[s] the burden of establishing
>       the three fundamental standing elements.  When a
>       defendant raises standing as the basis for a motion
>       under Rule 12(b)(1) to dismiss for lack of subject
>       matter jurisdiction, as the Commissioner did in this
>       case, the district court "may consider evidence outside
>       the pleadings without converting the proceeding to one
>       for summary judgment."  Because the standing elements
>       are "an indispensable part of the plaintiff's case,
>       each element must be supported in the same way as any
>       other matter on which the plaintiff bears the burden of
>       proof, i.e., with the manner and degree of evidence
>       required at the successive stages of the litigation."
>       **Lujan**, 504 U.S. at 561, 112 S.Ct. 2130 (explaining that
>       "[a]t the pleading stage, general factual allegations
>       of injury resulting from the defendant's conduct may
>       suffice," but in response to a summary judgment motion,
>       "the plaintiff can no longer rest on such 'mere
>       allegations,' [and] must 'set forth' by affidavit or
>       other evidence 'specific facts' " establishing standing
>       (quoting Fed.R.Civ.P. 56(e))).

**White Tail Park, Inc. v. Stroube**, 413 F.3d 451, 459 (4th Cir.

2005) (some citations omitted).

        Although the matter would be appropriate for further

consideration at the summary judgment stage of the case,

plaintiffs' general factual allegations of injury appear

sufficient to satisfy the first element.  The injury alleged is "an imminent invasion of . . . [plaintiffs'] Fourteenth Amendment due process rights to a fair hearing before an impartial tribunal and to the appearance of justice" ostensibly denied by the operation of Rule 29.  (Pls.' Surrep. at 2).

        Massey had one case pending before the supreme court of appeals at the time this civil action was filed and at least one additional case upon which it had petitioned for review. Additionally, both Massey and Marfork allege they are parties to many other circuit court actions that are "reasonably and imminently likely to come before" the Supreme Court of Appeals. (Compl. ¶¶ 7, 8).  Plaintiffs also allege they anticipate appearing as parties before the West Virginia court "in the near future[,]" at which time they will "need to file recusal motions, and will be again subject to Rule 29 . . . ."  (Pls.' Surrep. at 4).[5]

_____

        [5]Defendant contends plaintiffs cannot assert on the one hand, to avoid <u>Rooker</u>-<u>Feldman</u>, that they are not challenging particular recusal decisions and then, on the other, use those same prior recusal decisions to support the first element of their standing argument.  As will become apparent, however, the court understands the complaint's references to prior recusal decisions as intended to demonstrate only the manner in which Rule 29 has been applied to these plaintiffs in the past and to help explain the imminence of future injury as a result of Rule 29.

Regarding the remaining two elements, plaintiffs have adequately alleged at this juncture that Rule 29 is the cause of their injury and that the Rule's modification, perhaps either through a limiting construction or invalidation, would remedy the injury suffered.  The court concludes plaintiffs have adequately alleged standing.

## 2.  Rooker-Feldman

In 2005, the Supreme Court summarized the status of what had come to be known as the Rooker-Feldman doctrine.  The high Court noted that the doctrine had been

> applied by this court only twice, first in [R]ooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), then, 60 years later, in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738.

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005).

In Exxon, the Supreme Court sharply reined in the doctrine, which by that time had come to be understood as a

13

significant carve-out of the general rule that federal courts are
obliged to exercise the jurisdiction granted by Congress.  See
Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996).
Following Exxon, the doctrine is significantly circumscribed

> to cases of the kind from which the doctrine acquired
> its name: cases brought by state-court losers
> complaining of injuries caused by state-court judgments
> rendered before the district court proceedings
> commenced and inviting district court review and
> rejection of those judgments.

Exxon, 544 U.S. at 283 (emphasis supplied).


        Our court of appeals has since examined Exxon on
several occasions.  After observing the limits imposed by the
Supreme Court, the court of appeals in Washington v. Wilmore, 407
F.3d 274 (4th Cir. 2005), observed as follows:

> The doctrine preserves federalism by ensuring respect
> for the finality of state court judgments, and it
> preserves the separation of powers by ensuring that
> federal district courts exercise only original
> jurisdiction and that review of state court judgments
> is conducted only by the United States Supreme Court,
> as Congress has instructed.

Id. at 279 (emphasis supplied).  Within the context of that case,
the court of appeals additionally observed "Washington's claim of
injury rests not on the state court judgment itself, but rather
on the alleged violation of his constitutional rights by
Wilmore."  Id. at 280.

14

Nine months later, the court of appeals had occasion to more carefully examine the impact of Exxon on our circuit precedent:

> [Exxon] significantly altered this circuit's
> interpretation of the Rooker-Feldman doctrine. Under
> our prior cases, the Rooker-Feldman doctrine had been
> interpreted broadly to provide that the loser in a
> state-court adjudication was barred from bringing suit
> in federal court alleging the same claim or a claim
> that could have been brought in the state proceedings.
> Exxon teaches, however, that the Rooker-Feldman
> doctrine applies only when the loser in state court
> files suit in federal district court seeking redress
> for an injury allegedly caused by the state court's
> decision itself. Because Davani's suit does not
> challenge the state court's decision, and it instead
> seeks redress for an injury allegedly caused by
> Appellees, the Rooker-Feldman doctrine does not apply,
> and the district court's dismissal of Davani's
> complaint was in error.

Davani v. Virginia Dept. of Transp., 434 F.3d 712, 713 (4th Cir. 2006) (emphasis supplied). The court of appeals in Davani also emphasized the following language from Exxon:

> [Moreover, the Rooker-Feldman doctrine does not] stop a
> district court from exercising subject-matter
> jurisdiction simply because a party attempts to
> litigate in federal court a matter previously litigated
> in state court. If a federal plaintiff presents some
> independent claim, albeit one that denies a legal
> conclusion that a state court has reached in a case to
> which he was a party . . ., then there is jurisdiction
> and state law determines whether the defendant prevails
> under principles of preclusion.

Id. at 718 (quoted citation omitted).

Finally, similar to the closing observation in
<u>Washington</u> quoted above, the court of appeals attempted to
provide further guidance concerning the proper reach of the
doctrine:

> <u>If he is not challenging the state-court decision, the</u>
> <u>Rooker-Feldman doctrine does not apply</u>. If, on the
> other hand, he is challenging the state-court decision,
> the <u>Rooker</u>-<u>Feldman</u> doctrine applies. It is important to
> note that the <u>Rooker</u>-<u>Feldman</u> doctrine applies in this
> second situation even if the state-court loser did not
> argue to the state court the basis of recovery that he
> asserts in the federal district court. A claim seeking
> redress for an injury caused by the state-court
> decision itself -- even if the basis of the claim was
> not asserted to the state court -- asks the federal
> district court to conduct an appellate review of the
> state-court decision.
>
>     .  .  .  .
>
> In his federal complaint, Davani did not allege that
> the state decision caused him injury; rather, he
> alleged that Appellees discriminated against him in
> violation of federal and state law. Davani's federal
> claims do not challenge the state decision and are
> therefore "independent" from that decision.

<u>Id.</u> at 718-19.

In reviewing plaintiffs' allegations, one is struck by
their repeated reference to Rule 29 and its putatively
unconstitutional effects.  (<u>See</u> compl. ¶ 1 ("This is a civil
action to challenge the constitutionality of a West Virginia rule
of appellate procedure."); <u>see</u> <u>also</u> ¶ 14, 15, 16, 17, 32, 36).
The complaint is fairly understood to rest not on the injuries

16

wrought by the referenced denials of various disqualification
motions in the past, but rather on the lack of a meaningful
review process for those types of decisions and their expected,
future effects.  Indeed, plaintiffs seek no retrospective relief.

        The alleged Fourteenth Amendment violations find their
genesis not in any particular actions by any individual justice
but rather in Rule 29 itself.  At most, it might be said the
complaint's references to the recusal decisions of the named,
individual justice are referenced by plaintiffs only to
illustrate their view of the injustice worked by Rule 29.  The
proper focus for present purposes though is the nature of this
civil action.  In the court's estimation, plaintiffs do not
appear to challenge the past refusal of particular recusal
requests.  As noted in Davani, if a plaintiff "is not challenging
the state-court decision, the Rooker-Feldman doctrine does not
apply."  Davani, 434 F.3d at 718-19.

        The analysis is supported by a recent decision from the
United States Court of Appeals for the Sixth Circuit involving a
challenge to the recusal rules governing proceedings before the
Michigan Supreme Court.  In Fieger v. Ferry, 471 F.3d 637
(6th Cir. 2006), the court of appeals observed as follows:

     To the extent that Fieger challenges the

17

constitutionality of Michigan's recusal rules by
alleging that "[t]he threat that the Plaintiff cannot,
and will not, receive a fair hearing before an
impartial and independent tribunal is real, immediate,
and continuing," <u>Rooker</u>-<u>Feldman</u> does not bar his
action.  To that extent, the source of Fieger's alleged
injury is not the past state court judgments; it is the
purported unconstitutionality of Michigan's recusal
rule as applied in future cases.  Such a claim is
independent of the past state court judgments.  Thus,
insofar as the district court dismissed Fieger's
challenge to the constitutionality of Michigan's
recusal rule pursuant to the <u>Rooker</u>-<u>Feldman</u> doctrine,
the court's judgment must be reversed.

<u>Id.</u> at 646.

Based upon the foregoing analysis and authorities, the

court rejects the <u>Rooker</u>-<u>Feldman</u> argument.[6]

---

[6]The arguments asserting <u>res</u> <u>judicata</u> and failure to state a
claim are appropriate for summary disposition in view of this
same analysis.  The <u>res</u> <u>judicata</u> argument is based upon the view
that the defendant "has reviewed and issued decisions with regard
to the merits of Plaintiffs' various motions for
disqualification" which are entitled to "full faith and credit"
here.  (Def.'s Memo. in Supp. at 12).  The argument misconceives
the nature of this action which, as noted, appears to be aimed at
determining the constitutionality of Rule 29.
    Regarding the failure to state a claim, the Supreme Court of
Appeals asserts one component of the relief sought by plaintiffs,
namely, "to order the . . . [West Virginia court] to adopt a rule
that would have other justices . . .  review the merits of
disqualification motions" is beyond the supreme court of appeals'
constitutional authority.  Inasmuch as the parties have devoted
little attention to the argument, and it relates to the relief
sought rather than the viability of the claims alleged, the court
declines to reach the matter presently.

18

3.  _Younger_ and _Burford_ Abstention


The doctrine of abstention has its modern roots in
Railroad Comm. of Tex. v. Pullman Co., 312 U.S. 496 (1941).  In
Pullman, the Supreme Court stayed its hand on federal
constitutional issues pending clarification of state law by state
courts.  Since Pullman, the Supreme Court has extended abstention
to multiple situations where "federal courts should not exercise
expansive remedial powers when to do so would damage principles
of federalism and comity [.]"  Johnson v. Collins Entertainment
Co., 204 F.3d 573, 577 (4th Cir. 2000) (opinion accompanying
denial of petition for rehearing en banc ).  Abstention, however,
remains the exception to the rule that federal courts should
exercise jurisdiction granted by Congress.  Quackenbush v.
Allstate Ins. Co., 517 U.S. 706, 728 (1996) (citations omitted),

One ground for abstention is found in Younger v.
Harris, 401 U.S. 37 (1971).  Although initially applicable only
to attempts to enjoin state criminal matters, "[i]n the course of
the next 16 years seven major decisions from the Supreme Court
carried the Younger rules into . . . civil litigation and even
administrative proceedings."  17A Charles A. Wright et al.,
Federal Practice and Procedure § 4254 (2d ed. 1988).  It is thus

19

not surprising that our court of appeals has extended <u>Younger</u> "to
noncriminal judicial proceedings when important state interests
are involved." <u>Martin Marietta Corp. v. Maryland Comm'n on Human
Relations</u>, 38 F.3d 1392, 1396 (4th Cir. 1994).

The court is required to analyze three separate
elements when confronted with a <u>Younger</u> abstention request:

> <u>Younger</u> mandates that a federal court abstain from
> exercising jurisdiction and interfering in a state
> criminal proceeding if (1) there is an ongoing state
> judicial proceeding brought prior to substantial
> progress in the federal proceeding; that (2) implicates
> important, substantial, or vital state interests; and
> (3) provides adequate opportunity to raise
> constitutional challenges.

<u>Nivens v. Gilchrist</u>, 444 F.3d 237, 241 (4th Cir. 2006). The
first requirement is the foundational consideration upon which
the remaining two factors rest. See <u>Life Partners, Inc. v.
Morrison</u>, 484 F.3d 284, 300 (4th Cir. 2007).

The Supreme Court of Appeals' opening argument in
support of the first <u>Younger</u> prerequisite is as follows:
"Plaintiffs allege that they are seeking relief in cases
currently pending before the West Virginia Supreme Court and that
they are parties in numerous circuit court cases that are likely
to appear before the West Virginia Supreme Court." (Def.'s Memo.
in Supp. at 15). In its reply, it further notes the allegation

20

in plaintiffs' complaint that Massey "has one case pending before the West Virginia Supreme Court and at least one additional case on which Massey . . . has petitioned for review[,]" along with various actions then-pending in the West Virginia circuit courts. (Compl. ¶ 7). Likewise, Marfork is party to at least six actions in the circuit courts.

Insofar as the Supreme Court of Appeals suggests plaintiffs' federal constitutional arguments might ordinarily be addressed in a state tribunal, the argument is not easily discarded in view of controlling precedent:

> "[T]he mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." Constitutional questions -- commonly involved in <u>Younger</u> abstention cases -- generally can be resolved by state courts. <u>Younger</u> itself involved such a question; much of its progeny did as well. We have previously affirmed that <u>Younger</u> abstention is premised upon the idea that "state courts are fully competent to decide issues of federal law . . . ." Indeed, the Supremacy Clause . . . . requires as much. But while most of the areas of important state interests noted above -- criminal law, insurance law, family law, zoning law, and the like -- may from time to time implicate various constitutional provisions, there is no disrespect to federal-state relations in allowing state courts to address those constitutional questions. This is because many constitutional provisions assign rights and responsibilities but do not themselves create any particular interests for states against their sister states, or vis-a-vis the national government.

<u>Harper v. Public Service Commission</u>, 396 F.3d 348, 355 (4th Cir. 2005). Two difficulties, however, counsel against abstention on the present record.

First, the court is left to speculate concerning the nature of the state actions involving plaintiffs and the recusal issues that have arisen or may arise therein.  This hampers the court's ability to analyze whether there is actually an ongoing state judicial proceeding.

Second, assuming such an action or actions exist, only minimal rebuttal argument is offered concerning plaintiffs' contention that these state proceedings do not offer them an adequate opportunity to raise the present constitutional challenges in state court.  As a result, one is left largely to speculate concerning whether the Supreme Court of Appeals would be willing, or have the ability under West Virginia law, to entertain a Fourteenth Amendment challenge to one of its appellate rules such as Rule 29 in a pending appeal.

Moreover, the wholly prospective nature of this action, which challenges the constitutionality of Rule 29 and not any particular ruling by the Supreme Court of Appeals or its member justices, is also worthy of note in view of controlling precedent:

> Of course, if Moore is correct about his charac-
> terization of his complaint [as a forward looking
> action to declare an ordinance unconstitutional for
> future application], he is correct in arguing that the
> Younger doctrine should not be applied to stay this

action.  See Wooley v. Maynard, 430 U.S. 705, 711, 97
S.Ct. 1428, 51 L.Ed.2d 752 (1977) (noting that Younger
does not bar a wholly prospective federal action even
if the plaintiff failed to exhaust his state appellate
remedies on a prior conviction). In Wooley, the federal
plaintiff had been convicted of violating a state
statute and had already served his sentence when he
brought suit in federal court, seeking a declaratory
judgment that the statute under which he had been
convicted was unconstitutional and an injunction
enjoining the State from prosecuting him in the future
under the statute.  Because the federal plaintiff
sought prospective relief against the threat of future
prosecution and did not seek to "have his record
expunged, or to annul any collateral effects" of his
conviction, the Supreme Court held that Younger did not
require the federal court to abstain even though the
plaintiff had failed to seek review of his conviction
in the state appellate court.

Moore v. City of Asheville, 396 F.3d 385, 396 (4th Cir. 2005).

        Despite these significant obstacles, Gilbert v. Ferry,

401 F.3d 411 (6th Cir. 2005) ("Gilbert I"), is cited as

supporting the Younger abstention argument.  In Gilbert I,

plaintiff complained about two discrete refusals by certain

justices of the Michigan Supreme Court to recuse themselves from

consideration of certain actions before them in which plaintiff

was involved.  The nature of the Gilbert I action is more fully

disclosed below:

        In support of this § 1983 action for violation of their
        due process right to a fair hearing before an impartial
        tribunal, the Plaintiffs raise the same arguments that
        they raised in their motions for recusal, namely, that
        the Defendant justices were biased against them because
        they had a pecuniary interest in the Gilbert case

                              23

because the Michigan Chamber of Commerce, appearing
before the justices as an amicus curiae, donated
millions of dollars to their respective campaigns, and
because the justices expressed personal and
professional animus toward Mr. Fieger.

. . . .

The district court also noted, and we agree, that once
the Michigan Supreme Court decided the motions to
recuse, this suit became a de facto appeal of those
decisions, regardless of when the Plaintiffs filed the
present action.  Plaintiffs raised the same due process
arguments in their motions for recusal as they do in
this suit, so that the district court could not
conclude that the Plaintiffs suffered a due process
violation without finding that the motions to recuse
were decided incorrectly. The <u>Rooker</u>-<u>Feldman</u> doctrine
forbids this action.

<u>Id.</u> at 415, 418.[7]


        <u>Gilbert I</u> is of limited utility here.  The <u>Younger</u>

analysis in <u>Gilbert I</u> is found in a single paragraph of dicta at

the conclusion of the opinion, within which the court of appeals

observed that plaintiff did not respond to the defendants'

argument on the point.  The entirety of the court of appeals'

analysis of the issue is as follows:

_____

        [7]In <u>Gilbert I</u>, the United States Court of Appeals for the
Sixth Circuit determined that plaintiffs' claims were barred
under the <u>Rooker</u>-<u>Feldman</u> doctrine.  In the alternative, the court
of appeals concluded, with the brief analysis reproduced within,
that <u>Younger</u> would require abstention.  Twenty days later, the
Supreme Court handed down its <u>Exxon</u> decision.  On rehearing, via
a <u>per curiam</u> order in <u>Gilbert v. Ferry</u>, 413 F.3d 578 (6th Cir.
2005) ("<u>Gilbert II</u>"), the court of appeals vacated that portion
of its analysis in <u>Gilbert I</u> relying upon the <u>Rooker</u>-<u>Feldman</u>
doctrine and adhered to the brief, aforementioned <u>Younger</u>
analysis.

> The motions for recusal against the Defendant justices
> certainly constituted ongoing judicial proceedings at
> the time the federal complaint was filed; important
> state interests, such as when and under what
> circumstances Michigan Supreme Court justices should
> recuse themselves, were implicated; and the Plaintiffs
> had an adequate opportunity to raise their
> constitutional challenge, as evidenced by the fact that
> their lengthy brief in support of their motion to
> recuse contained the same arguments and proofs as
> presented in their complaint filed in federal court.

Id. at 419.

It is noteworthy that the analysis in Gilbert I rests in part on that civil action's constitutional challenge to specific recusal decisions made by members of the Michigan Supreme Court, as distinguished from plaintiffs' claims here, which challenge the viability of Rule 29 under the federal Constitution. Gilbert I is thus distinguishable from this action.[8]

Absent further development of the foregoing key considerations identified by the court, namely, the nature of the state actions involving plaintiffs, the recusal issues therein arising, and an adequate opportunity to raise the present constitutional challenges for the first time in a state appellate

---

[8]It is also noteworthy that the court of appeals in the earlier-mentioned Fieger decision recounted the use of Younger in Gilbert I and Gilbert II. In the midst of the recusal rule challenge in Fieger, however, the majority opinion did not otherwise mention or resort to that abstention doctrine.

25

proceeding, the court is unable to conclude that abstention is appropriate.[9]

III.

Based upon the foregoing analysis, the court ORDERS that the motion to dismiss be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  September 21, 2007

John T. Copenhaver, Jr.
United States District Judge

---

[9]The same is true regarding <u>Burford</u>, which "requires abstention in 'cases (1) that present "difficult questions of state law . . ." or (2) whose adjudication in a federal forum "would be disruptive of state efforts to establish a coherent policy"' in important areas of public concern.'" <u>Harper</u>, 396 F.3d at 358 (quoted authorities omitted).  The parties have devoted only a few paragraphs of discussion toward these two rather weighty considerations.

26