IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| MASSEY ENERGY COMPANY,<br><br>and<br><br>MARFORK COAL COMPANY, INC., a subsidiary of Massey Energy Company,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE SUPREME COURT OF APPEALS OF WEST VIRGINIA,<br><br>*Defendant.* | CIVIL ACTION NO. 2:06-0614<br>(Honorable John T. Copenhaver, Jr.) |

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

In the previously filed memorandum supporting summary judgment, Plaintiffs Massey Energy Company and Marfork Coal Company ("Massey" or "Plaintiffs") demonstrated that Rule 29 of the West Virginia Rules of Appellate Procedure ("Rule 29") violates Plaintiffs' Fourteenth Amendment due process right to a fair hearing before an impartial tribunal. Simply put: the rule violates due process because it always permits disqualification motions to be decided solely by a justice who has an interest in the outcome. In the face of this irreconcilable conflict with the United States Constitution, the Supreme Court of Appeals of West Virginia ("West Virginia Supreme Court" or "Defendant") seeks refuge under an astounding theory that, unlike all other proceedings found in this country's jurisprudence, disqualification proceedings alone are not subject to the Due Process Clause. Defendant no doubt has retreated to this position because it is impossible to envision any scenario in which Rule 29 fairly provides impartial review of disqualification motions.

As set forth more fully below, no creative due process theory, selective parsing of well-settled precedent, or mischaracterization of Plaintiffs' complaint, can obscure Rule 29's fatal constitutional flaws or otherwise save the rule from being struck down. Plaintiffs, therefore, respectfully ask the Court to grant Plaintiffs' motion for summary judgment.

I. **Defendant Has Failed To Show That Rule 29 Provides For An Impartial Tribunal As Required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

As explained in Plaintiffs' prior memorandum, the Fourteenth Amendment to the United States Constitution guarantees the right to a fair hearing before an impartial tribunal as an "essential" and "basic requirement" of due process. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases."); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970); *In re Murchison*, 349 U.S. 133, 136 (1955); *Bowens v. N.C. Dep't of Human Res.*, 710 F.2d 1015, 1020 (4th Cir. 1983). Because "no man can be a judge in his own case," *Murchison*, 349 U.S. at 136, due process will not permit a judge to preside over matters in which the judge is involved personally. *See Offutt v. United States*, 348 U.S. 11, 17 (1954); *United States v. Cooley*, 1 F.3d 985, 995 & n.8 (10th Cir. 1993); *United States v. Alabama*, 828 F.2d 1532, 1545 (11th Cir. 1987), *rev'd in part on other grounds*, 14 F.3d 1534 (11th Cir. 1994).

In light of these bedrock constitutional principles, Rule 29 plainly denies due process. By its terms, Rule 29 permits a justice who is the subject of a motion for disqualification to determine exclusively the merits of that motion. Because motions for disqualification, by their very nature, place the justice's conduct directly at issue, the end result of Rule 29 is that a justice is allowed to "be a judge in his own case." Consequently, the rule violates due process and must be struck down.

In response to Plaintiffs' constitutional challenge, Defendant attempts to save Rule 29: *first*, by analyzing the rule under an amorphous "meaningfulness" standard, rather than the directly applicable "impartial tribunal" precedent developed by the federal courts; *second*, by explaining that

2

the rule survives if it can be applied fairly in any instance, yet failing to provide even one example in which a disqualification motion receives impartial review under Rule 29; *third*, by characterizing the remote possibility of impartial United States Supreme Court review as sufficient to satisfy the stringent demands of the Due Process Clause; and *fourth*, by advancing the far-fetched notion that the Due Process Clause does not apply to the adjudication of disqualification motions. As set forth below, none of these arguments has any basis in constitutional law and, thus, fall woefully short of providing any basis upon which to save Rule 29 from being struck down.

A. **The Touchstone of the Constitutional Analysis is "Impartiality."**

When subjecting Rule 29 to constitutional scrutiny under the Due Process Clause, the touchstone of the analysis is the *impartiality* of the tribunal that adjudicates a disqualification motion. In defining the essential elements of due process, the Supreme Court has stated broadly: "The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner." *Goldberg*, 397 U.S. at 267 (citations and quotations omitted). Recognizing the obvious need to clarify the fundamental elements of a "meaningful" hearing, the Supreme Court went on to note more specifically that "of course, an impartial decision maker is essential." *Id.* at 271. It is precisely this distinction that Defendant ignores at the outset of its analysis of Rule 29, preferring instead to consider Rule 29 under its own amorphous notion of "meaningfulness" unmoored to the more rigorous and carefully defined principle of impartiality. (Def.'s Resp. 14.) It is only by applying this broad concept subjectively that Defendant can hope to shoehorn Rule 29 within the boundaries of the Due Process Clause.

The Due Process Clause creates a "constitutional floor." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Notice and the opportunity to be heard are the "minimum" standards of due process, the floor beneath which no state procedure threatening the deprivation of life, liberty, or property, may sink. *See Rusu v. INS*, 296 F.3d 316, 321 (4th Cir. 2002); *Goldberg*, 397 U.S. at 269-71 (holding that

3

due process also requires, for example, "opportunity to confront and cross-examine adverse witnesses," "right to be heard by counsel," and decisions "rest[ing] solely on the legal rules and evidence adduced at the hearing.") As such, it is necessary, but not sufficient, that the baseline requirements of notice and an opportunity to be heard are met. It is, therefore, plainly not enough that Rule 29 permits Plaintiffs simply to file a disqualification motion; "the floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal.'" *Bracy*, 520 U.S. at 904.

It is on this crucial point that *Fieger v. Ferry*, 2007 WL 2827801 (E.D. Mich. Sept. 26, 2007), the case upon which Defendant heavily relies, fails. In *Fieger*, the court briefly considered a challenge to the constitutionality of Michigan's recusal procedures, which permit the subject of a disqualification motion to determine conclusively its merits. Although the court began its analysis by restating the well-settled principles set forth above, 2007 WL 2827801 at *4-*5, it then abandoned the impartial tribunal standard that it had previously mentioned, instead applying the nebulous concept of "meaningfulness," *id.* at *6 (quoting *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003)). Under this standard, the court upheld the Michigan rule, stating simply that "[t]here is a procedure and forum for parties to seek the recusal of a justice believed to be biased." *Id.* Since even the most partial tribunals can provide a procedure and a forum, the court simply begged the central constitutional question, namely, whether the procedure provided an *impartial* forum.[1] The *Fieger* court erred by failing to recognize that a fair hearing in an impartial tribunal is an essential aspect of the opportunity to be heard at a meaningful time and in a meaningful manner.

---

[1] Not surprisingly, none of the due process cases upon which Defendant and the *Fieger* court rely involve an issue regarding the tribunal's impartiality. *See City of Los Angeles v. David*, 538 U.S. 715 (2003) (examining promptness of municipal parking violation hearing held 27 days after violation); *Zinermon v. Burch*, 494 U.S. 113 (1990) (lack of informed consent competency hearing before mental patient was "voluntarily" admitted for treatment at a mental hospital); *United States v. Salerno*, 481 U.S. 739 (1987) (pretrial detention provision of the Bail Reform Act of 1984); *Mathews v. Eldridge*, 424 U.S. 319 (1976) (termination of Social Security disability benefits without an evidentiary hearing); *Rusu v. INS*, 296 F.3d 316 (4th Cir. 2002) (examining constitutionality of INS asylum procedures that permitted hearings by video conference).

### B. Defendant Has Failed To Demonstrate Any Instance In Which Rule 29 Provides Impartial Review.

Defendant repeatedly intones that Plaintiffs must prove "that no set of circumstances exists" under which Rule 29 could be applied constitutionally. (Def.'s Resp. 10, 12, 15, 16.) Yet, this is precisely what Plaintiffs demonstrated in the previous memorandum. It is well-settled that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Murchison*, 349 U.S. at 136. In any adjudication of a disqualification motion, the conduct, circumstances and credibility of the justice are inherently the central issue to be decided. *See* W. Va. R. App. P. 29(c) (requiring party to state facts and reasons for disqualification and applicable provision of Canon 3(E)(1) of the Code of Judicial Conduct). Because a motion for disqualification always, by its very nature, raises questions about the justice personally—for example, his finances, biases, knowledge or conduct—the justice in question always has "an interest in the outcome." There is, therefore, no scenario in which the justice in question could adjudicate the motion consistent with the requirements of due process.[2]

Having been given a full opportunity to explain how Rule 29 could possibly be applied in a manner such that a disqualification motion would receive impartial consideration, Defendant offers nothing. Instead, Defendant suggests in a footnote that the potential for an actual recusal is sufficient to cure any procedural infirmities. (Def.'s Resp. 4, 15 n.9.) Whether or not a justice ultimately withdraws, however, has no bearing on the constitutionality of the procedure by which the justice arrived at his decision. An unconstitutional procedure does not become valid simply because it might, on occasion, not result in any harm beyond the due process violation itself.

---

[2] Defendant is, therefore, wrong when it says that a constitutional determination necessarily requires consideration of circumstances and relationships exclusive to *every* recusal motion, (Def.'s Resp. 9), or that "a determination changes as the parties and the justice at issue change," (*id.* at 18).

5

By focusing entirely on the possibility of recusal, Defendant forgets "the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process." *Marshall*, 446 U.S. at 242. As to the former, which may be called the "instrumental" rationale, the Due Process Clause "serve[s] as a check on the *possibility* that a wrongful deprivation would occur." *Parratt v. Taylor*, 451 U.S. 527, 538 (1981) (emphasis added), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Inherent in the possibility that a lack of due process will result in a wrong decision, is the possibility that it will not. Clearly, the Due Process Clause does not require Plaintiffs to establish that Rule 29 could never result in a proper recusal. On the instrumental theory, the Due Process Clause reduces the possibility of a wrong decision; it is not implicated only when one is certain to occur.

Defendant's result-oriented view of due process is also inconsistent with the principle, fully recognized by the Supreme Court, that the Due Process Clause is designed to promote "participation and dialogue by affected individuals in the decisionmaking process." *Marshall*, 446 U.S. at 242. By focusing exclusively on the possible outcome of a disqualification motion, Defendant completely neglects this second "central concern" of the Due Process Clause—the dignity that attends due process of law, and "the feeling, so important to a popular government, that justice has been done." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 172 (1951) (Frankfurter, J., concurring); *see also* Laurence H. Tribe, *American Constitutional Law* 666 (2d ed. 1988) ("Both the right to be heard from, and the right to be told why, are analytically distinct from the right to secure a different outcome; these rights to interchange express the elementary idea that to be a *person*, rather than a *thing*, is at least to be consulted about what is done with one.") This intrinsic rationale is wholly separate from any instrumental concern with reaching the correct result.

The above principles are illustrated in the case of *City of Lakewood v. Plain Dealer Publishing Co.*, in which the Supreme Court explained that it "ha[s] long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." 486 U.S. 750, 755-56 (1988). In that case, a city ordinance gave the mayor "unbounded discretion" to deny the plaintiff's application to place a newspaper rack on public property. *Id.* at 755. Rather than seek a permit, the newspaper challenged the new ordinance facially. *Id.* at 754. The Supreme Court struck down the ordinance without requiring the newspaper to subject itself to an unconstitutional process on the chance that it might produce a favorable result. *Id.* at 759-60. The process itself was unconstitutional, and so the outcome was irrelevant. *See also Lovell v. Griffin*, 303 U.S. 444, 453 (1938) ("As the ordinance [providing for unlimited discretion] is void on its face, it was not necessary for appellant to seek a permit under it.").

As with the licensing statute in *Lakewood*, so too Rule 29 vests the government with unconstitutional authority: it allows a justice to rule exclusively on a matter in which the justice has an interest. The possibility that a justice, on occasion, might render a decision that does not exacerbate the due process violation is of no moment. As written, Rule 29 violates Plaintiffs' due process right to a fair hearing in a fair tribunal; the results of any given disqualification motion may change from case to case, but the unconstitutional process of Rule 29 remains.

Besides the above attempt to rewrite the Due Process Clause, Defendant also tries to redefine the term "proceeding" broadly to mean an entire litigation, rather than particular stages of a case. Defendant's obvious goal in attempting to force this untenable construction upon the Court is to place the justices, who are at the center of any disqualification issue, out on the periphery where it would be more difficult to demonstrate an interest in a particular outcome. Only by completely redefining the context in which a justice's interest is evaluated can Defendant hope to demonstrate

any instance in which a justice has no disqualifying interest that would run afoul of due process or otherwise prevent the justice from adjudicating a motion under Rule 29.

To accomplish this effort, Defendant musters only a two-page opinion from the Ninth Circuit, *United States v. Feldman*, 983 F.2d 144 (9th Cir. 1992), which Defendant misinterprets. In *Feldman*, the Ninth Circuit reviewed the authority of a federal judge to withdraw only from the restitution portion of a resentencing proceeding. In resolving the question before it, the Ninth Circuit simply applied the plain terms of the federal recusal statute. *See* 28 U.S.C. § 455(d)(1). As the court explained, that law defines the term "proceeding" to include "pretrial, trial, appellate review, or other stages of litigation." *Feldman*, 983 F.2d at 145. The court also held that a judge may not selectively recuse himself solely from hearing particular "subject matter" or "certain issues;" if a judge wishes to recuse, then the judge must withdraw "from a whole proceeding, an entire 'stage of litigation.'" *Id.* The court's brief analysis, therefore, simply reaffirmed that a litigation encompasses more than one possible "proceeding," and that each proceeding is also characterized as a "stage of litigation." In *Feldman*, the trial judge *could* recuse himself from a "stage of litigation"—in that case, the resentencing hearing—but not solely from the restitution portion.

Defendant takes this unremarkable application of the federal statute's plain terms and misinterprets it to suggest that the term "proceeding" exclusively connotes the *entire* litigation rather than any number of its constituent parts. (Def.'s Resp. 23.) Defendant's analysis is fatally flawed, however, for at least several reasons: *first*, as demonstrated above, the *Feldman* court and the statute clearly contemplate numerous "proceedings" or "stages of litigation" within a case; *second*, there is absolutely nothing in the text of the statute or the opinion that in any way suggests that a motion for disqualification does not constitute a separate stage of litigation; like a resentencing, a disqualification motion involves separate motions, briefing, and possibly oral argument, all on issues distinct from the main case; and *third*, Defendant fails to explain, in any event, how the terms of the

8

federal statute inform any understanding of the Due Process Clause. In the final analysis, Defendant's implausible construction of the term "proceeding" is simply a red herring designed to divert the Court's attention from the fact that all proceedings to adjudicate disqualification motions under Rule 29 are controlled exclusively by a justice with "an interest in the outcome." No exotic parsing of language can hide this fatal constitutional defect.

### C. The Remote Possibility of Supreme Court Review Is Not Constitutionally Sufficient.

Defendant also attempts to justify Rule 29 by pointing to the remote possibility of impartial review by the Supreme Court of the United States through a petition for writ of certiorari. The Supreme Court itself, however, has consistently held that the possibility of appellate review is never sufficient to save an unconstitutional procedure. *See Ward v. Vill. of Monroeville*, 409 U.S. 57, 61-62 (1972) ("Nor, in any event, may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.") Moreover, the Supreme Court has made clear that review before that court, in particular, is an "inadequate substitute" for a proper adjudication below. *See England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 416 (1964).

In *England*, the Supreme Court explained one fundamental reason why appellate review can never ameliorate a constitutionally defective procedure below:

> [S]uch review, even when available by appeal rather than only by discretionary writ of certiorari, is an inadequate substitute . . . . This is true as to issues of law; it is especially true as to issues of fact. Limiting the litigant to review here [i.e., in the Supreme Court] would deny him the benefit of a federal trial court's role in constructing a record and making fact findings. How the facts are found will often dictate the decision of federal claims. It is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues. There is always in litigation a margin of error, representing error in factfinding.

375 U.S. at 416-17 (citations and quotations omitted). Under Rule 29, the factual record related to a motion for disqualification is resolved entirely by a justice who has a personal interest in the matter.

9

As a result, Supreme Court review, even if granted, cannot repair the harm that flows from the failure to provide impartial scrutiny of the underlying record in the first instance.

Even if the Supreme Court was equipped to protect the due process interests of the litigants below, a petition for writ of certiorari, as a practical matter, is hardly a realistic alternative to impartial review when a disqualification motion is initially filed. As the historical practice of the Supreme Court demonstrates, only a very small percentage of petitions for writ of certiorari are granted. Of the 10,529 petitions that were pending before or filed with the Supreme Court between October 1, 2006 and September 30, 2007, approximately 1.4 percent (151) were granted. *See* Admin. Office of the U.S. Courts, 2007 Annual Report of the Director: Judicial Business of the U.S. Courts, Table B-2 (2008).[3] Consequently, Supreme Court review, in addition to being inadequate in principle, is also insufficient in practice. Defendant, therefore, may not rely upon the dim prospect of such review to save Rule 29.

### D. The Due Process Clause of the Fourteenth Amendment Applies to the Adjudication of Disqualification Motions.

Defendant's next argument in support of Rule 29 is its most outlandish, namely, that the Due Process Clause does not apply to the adjudication of disqualification motions. (Def.'s Resp. 22-24) ("[A proceeding in] which a Justice's recusal is sought simply does not and cannot implicate any due process right.") It is worth noting at the outset that Defendant's current, self-serving position is wholly at odds with its own precedent; indeed, the West Virginia Supreme Court has held:

> It appears to be the general rule that a judge before whom a disqualification motion is filed should not hear the merits of the motion.
>
> The reason for this rule is rather obvious. Without it, the judge is placed in the difficult position of attempting to judge a matter which involves him directly and personally. No man can be a judge in his own cause.

---

[3] Available at http://www.uscourts.gov/judbus2007/contents.html (last accessed August 4, 2008).

*Stern Bros., Inc. v. McClure*, 160 W. Va. 567, 572 (1977) (citations omitted). Defendant's position is also contrary to the Supreme Court's instruction that "*[e]very procedure* which would offer a possible temptation to the average man as a judge to forget the burden of proof . . . denies the latter due process of law." *Turney v. Ohio*, 273 U.S. 510, 532 (1927) (emphasis added). Indeed, all of the relevant Supreme Court cases cited by the parties in this matter necessarily rest upon the fact that the Due Process Clause applies to disqualification motions. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986); *Ward v. Vill. of Monroeville*, 409 U.S. 57 (1972); *In re Murchison*, 349 U.S. 133 (1955); *Turney v. Ohio*, 273 U.S. 510 (1927). Even the *Fieger* court did not contemplate setting the constitutional bar as low as Defendant suggests.

The contention that the Due Process Clause contains a blind spot with respect to recusal adjudications not only is impossible to square with the law, but also fails as a matter of logic, for it offers no principled limitation on judicial authority. If Defendant is correct that Rule 29 is beneath the purview of the Due Process Clause, then Plaintiffs would not be entitled to a fair hearing in an impartial tribunal on a disqualification motion. Unrestrained by fundamental principles of due process, Defendant could, therefore, dispose of disqualification motions by any process whatsoever, no matter how flagrantly arbitrary or capricious (*e.g.*, by flipping a coin). Although Defendant surely would not attempt to justify a process that resolved disqualification motions by pure chance, such a procedure is not foreclosed by Defendant's constitutional theory. The absurdity of this outcome highlights the larger point: disqualification proceedings are obviously subject to constitutional limits. Accordingly, Rule 29 must provide due process or else it must be invalidated.

### E. Past Practice Cannot Save An Unconstitutional Procedure.

Defendant's final justification for Rule 29 is that it operates in a fashion that is similar to the practice of other state and federal courts. Although Defendant claims that the federal recusal statute has been analyzed "by all levels of the federal court system," and that the majority of states possess

similar rules, Defendant offers not one case—with the exception of the flawed *Fieger* opinion—that subjected any of those rules or practices to scrutiny under the impartial tribunal requirements of the Due Process Clause.[4] Even the Supreme Court's disqualification process has not been challenged, as Defendant tacitly concedes when it explains: "[T]he United States Supreme Court has never questioned the constitutionality of the process provided by the Court to parties seeking the disqualification of a Justice." (Def.'s Resp. 17.) Indeed, the Supreme Court cases cited by Defendant are both memoranda by challenged justices explaining why they denied a particular disqualification motion. *See Cheney v. U.S. Dist. Court*, 541 U.S. 913 (2004) (Scalia, J.); *Laird v. Tatum*, 409 U.S. 824 (1972) (Rehnquist, J.). Neither case even remotely touches upon whether the Supreme Court's process complies with the Due Process Clause.

The absence of any rigorous constitutional review of past practice has not gone unnoticed, however. In a lengthy critique of current judicial recusal procedures, one legal scholar has noted:

> [T]he recusal process is unique in the degree to which it has eschewed the basic procedural elements that have been viewed as indispensable to maintaining the legitimacy of adjudication. Unlike almost any other area of the law, the process by which judges decide whether to recuse themselves ignores the systems usually employed to resolve disputes in a fair and impartial manner. As a general matter, the recusal process is usually not adversarial, does not provide for a full airing of the relevant facts, is not bounded by a developed body of law, and often is not concluded by the issuance of a reasoned explanation for the judge's decision. *Most importantly, the decision itself is almost always made in the first instance by the very judge being asked to disqualify himself, even though that judge has an obvious personal stake in the matter.*

Amanda Frost, *Keeping Up Appearances: A Process-Oriented Approach To Judicial Recusal*, 53 U. KAN. L. REV. 531, 536 (Apr. 2005) (emphasis added).

To be sure, Rule 29 shares many of the characteristics found in the recusal procedures of other states; but an unconstitutional practice hardly gains legitimacy with age or frequency. *See, e.g.,*

---

[4] Furthermore, much of the proffered cases are distinguishable from the matter before the Court insofar as they involved recusal decisions of trial court judges, whose decisions, unlike those of West Virginia Supreme Court justices, ultimately receive impartial appellate review.

*INS v. Chadha*, 462 U.S. 919, 977 (1983) (overturning legislative veto as violation of separation of powers doctrine, notwithstanding fact that "Congress, whose Members are bound by oath to uphold the Constitution . . . placed these mechanisms in nearly 200 separate laws over a period of 50 years."); *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008) (overturning 33-year-old firearms regulation statute because it violated individual right not previously recognized by Supreme Court).

Ultimately, past practice cannot save Rule 29 from its fatal constitutional flaws. Because Rule 29 permits disqualification motions to be determined solely by the justice who is personally involved in the matter to be decided and who, thus, has an interest in the outcome, the rule violates the most fundamental and universally recognized principles of due process. Plaintiffs, therefore, respectfully request that the Court strike down Rule 29 as unconstitutional insofar as it violates the Fourteenth Amendment Due Process Clause, which guarantees each citizen who appears before a judicial body the right to an impartial tribunal.

## II. Plaintiffs Have Standing to Bring Their Claims

As Plaintiffs recounted in their original motion, federal courts have a duty to "decide concrete cases that Congress wants adjudicated." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 164 (4th Cir. 2000) (en banc) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)). To ensure that a matter coming before a court is sufficiently concrete, federal courts require that a plaintiff to have standing to bring suit. The Fourth Circuit has set forth the well-settled standard for establishing standing: "(1) injury in fact; (2) traceability; and (3) redressability." *Friends of the Earth*, 204 F.3d at 154 (citations and quotations omitted). Plaintiffs easily satisfy each of these elements.

A plaintiff meets the first prong of the standing inquiry where it has "suffered an injury in fact . . . which is (a) concrete and particularized and (b) actual or imminent[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotations omitted). Plaintiffs have clearly alleged an imminent injury to their Fourteenth Amendment due process rights. *See, e.g., Murchison*, 349 U.S.

13

at 136; *Marshall*, 446 U.S. at 242. Because Plaintiffs will appear before the West Virginia Supreme Court in the near future, will need to file recusal motions, and will be again subject to Rule 29, the injury that Plaintiffs will suffer as a result of Rule 29's constitutional defects is concrete, particularized and imminent.

Plaintiffs also have satisfied the "traceability" element of standing analysis because their injury is "caused by the conduct complained of and not by the independent action of some third party not before the court." *Friends of the Earth*, 204 F.3d at 154. There is a "genuine nexus" between Plaintiffs' injury and Defendant's conduct, *id.* at 161, because the infringement of Plaintiffs' due process rights is directly traceable to the existence of Rule 29, which Defendant enacted. Contrary to Defendant's repeated claims otherwise, Plaintiffs' standing rests upon their allegation that *Rule 29 itself*, in its current form, is the cause of their constitutional injury—*not* past recusal decisions. *See Miller v. Brown*, 462 F.3d 312, 318 (4th Cir. Aug. 30, 2006); *D.C. Ct. of Apps. v. Feldman*, 460 U.S. 462, 486 (1983) (distinguishing operation of court rule in particular instance from general constitutionality of rule).

Plaintiffs have satisfied the last requirement of standing because its constitutional injury will be redressed by a favorable decision of the Court. *Friends of the Earth*, 204 F.3d at 162 (requiring that plaintiff "personally would benefit in a tangible way from the court's intervention."). Because Plaintiffs' injury is caused by the operation of Rule 29, the straightforward request to amend the rule so that it complies with the Fourteenth Amendment plainly satisfies the requirements of standing because such relief would wholly eliminate the constitutional injury.

Despite the Court's clear statement that "[t]he complaint is fairly understood to rest not on the injuries wrought by the referenced denials . . . but rather on the lack of a meaningful review process," (Slip Op. Den. Mot. Dismiss 16-17), Defendant doggedly asserts that Plaintiffs' claims are "entirely hypothetical" because they "require[ ] this Court to assume that the Plaintiffs have or will

14

suffer some deprivation . . . as a result of a Justice's consideration of a recusal motion, even where the Justice grants their motion" (Def.'s Resp. 4). As Plaintiffs and the Court have explained repeatedly, Plaintiffs' claims focus on the overall *recusal process* mandated by Rule 29, and *not* on any particular result, whether desired or not. Contrary to Defendant's misguided claims, Plaintiffs do not ask the Court to "predict the future" and assume that any justices "will violate their constitutional and ethics oaths." (Def.'s Resp. 4.) Quite to the contrary, Plaintiffs assume that Defendant, will abide by the mandate of its own rule, and will continue to foreclose impartial review of all recusal motions filed in the West Virginia Supreme Court.

In light of the above, it is clear that Plaintiffs have standing to bring this suit. The complaint alleges an imminent injury to Plaintiffs' specific constitutional right to a fair hearing before an impartial tribunal. The injury to Plaintiffs is caused by Rule 29. The requested relief—an amendment of Rule 29—would eliminate the constitutional harm. Consequently, Plaintiffs have presented a "case or controversy" for the Court to resolve.

## III. *Younger* Abstention Is Inappropriate.

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989) ("*NOPSI*") (quoting *Cohens v. Virginia*, 19 U.S. 264 (1821)). Indeed, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, *or judicial.*'" *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (emphasis added); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (cautioning lower federal courts that "[a]bstention rarely should be invoked"). A court must, therefore, approach abstention questions "with a presumption against abstention and requiring a clear justification before exercising discretion to abstain." *Gleichauf v. Ginsberg*, 859 F. Supp. 229, 232

(S.D.W. Va. 1994) (quoting *Hartshorn by Sade v. Heydinger*, 647 F. Supp. 73, 75 (S.D.W. Va. 1986)) (quotations omitted).

Before applying all three elements of the *Younger* test, the Court must carefully consider at the threshold whether or not this matter falls within "the narrow category of circumstances in which the federal court action would actually 'enjoin the [ongoing state] proceeding, or have the practical effect of doing so.'" *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007) (quoting *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (en banc)); *Nivens v. Gilchrist*, 444 F.3d 237, 246 (4th Cir. 2006) ("*Younger* cases . . . typically involve claimants who come to federal court in an attempt to enjoin their pending state criminal prosecutions. *Younger* exists to avoid an unnecessary intrusion into state proceedings and prosecutions[.]") (citation omitted); *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351 (4th Cir. 2005) ("*Younger* abstention originated as a doctrine requiring federal courts not to interfere with ongoing state criminal proceedings."). Where there is no threat of judicial intrusion into a state court proceeding, the *Younger* abstention doctrine is not applicable. *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1201 (3d Cir. 1992).

Because the threshold inquiry is entirely focused on *interference* with state judicial proceedings, it is well-settled that *Younger* abstention is inappropriate when a federal plaintiff only seeks prospective relief against violations of the United States Constitution. *See Wooley v. Maynard*, 430 U.S. 705, 711 (1977); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165-67 (4th Cir. 2008); *Moore v. City of Asheville*, 396 F.3d 385, 396 (4th Cir. 2005). As the Fourth Circuit has held: "[I]f [a plaintiff] is correct about his characterization of his complaint [as wholly prospective], he is correct in arguing that the *Younger* doctrine should not be applied to stay [the] action." *Moore*, 396 F.3d at 396. *See also Laurel*, 519 F.3d at 167 (recognizing "'wholly prospective relief' exception" to *Younger*). In the instant case, Plaintiffs do not ask the Court to disturb or annul any state court judgments whatsoever, to redress any previous injuries, or otherwise to interfere with a pending state court

proceeding. Instead, Plaintiffs seek only a declaration that Rule 29 is unconstitutional and an amendment of the rule so that it conforms to the Constitution. Because Plaintiffs seek wholly prospective relief, the *Younger* abstention doctrine is entirely inapplicable and the Court must decide the pending constitutional question.

In an effort to mischaracterize Plaintiffs' current suit for declaratory relief as not wholly prospective, Defendant misapplies the Fourth Circuit's holding in *Laurel Sand & Gravel, Inc.* to Plaintiffs' complaint. In *Laurel*, the court concluded that *Younger* foreclosed federal jurisdiction because the plaintiff's relief was not wholly prospective. Specifically, the plaintiff sought attorneys fees incurred in previous state court proceedings, *see Laurel*, 519 F.3d at 167 ("Laurel seeks attorney fees incurred in this suit *as well as at the administrative level*.") (emphasis added); and the plaintiff challenged a statute "as applied" to *one particular case* in which the federal court ultimately refused to meddle, *id.* ("Laurel also requests a declaration that the Dewatering Act 'as applied' to the Thomas well violated its constitutional rights."). Neither of these claims resembles Plaintiffs' challenge to Rule 29: Plaintiffs seek no attorney fees for any previous state court litigation and do not ask the Court to disturb any prior application of Rule 29. Consequently, Defendant has not met its burden of demonstrating that *Younger* applies to this matter.[5] As a litigant seeking wholly prospective relief that will not interfere with any ongoing state court judgments whatsoever, Plaintiffs are fully entitled to bring their case in federal court.

Defendant's argument that Plaintiffs seek a so-called "large business" exception to the abstention doctrine is also wholly without foundation. What Plaintiffs demand is that the *Younger* doctrine be confined to its proper boundaries, rather than having it stretched to encompass any party that happens to be a party in state court and regardless of whether or not they raise federal

---

[5] Defendant attempts to sow confusion into the record by mischaracterizing the nature of Plaintiffs' constitutional claim, which challenges Rule 29 "as applied"—in other words, Rule 29 as the West Virginia Supreme Court has interpreted or developed its terms. It is not an attempt to challenge a *particular* application of Rule 29 in the past.

claims. Although Defendant asks the Court to abstain on that simple, but erroneous basis, Defendant cites no authority to support such a broad expansion of *Younger*. As Plaintiffs have explained on multiple occasions, the presence of "pending cases" is not the issue; the core *Younger* inquiry is whether the Court is being asked to interfere with a state court proceeding. In the absence of any such intrusion, the federal courts are obligated to retain jurisdiction over all constitutional questions presented. An abstention standard simply predicated on a party's ability to raise a claim in state court would vastly expand the authority of state courts over federal questions in a manner drastically at odds with the federal jurisdictional and civil rights statutes. *See Employers Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995) ("[T]he limited nature of the Younger abstention doctrine reinforces the preeminence of the federal system in certain areas of law.").

Because Plaintiffs do not ask the Court to interfere in any state proceeding, the Court is fully empowered by federal law to strike down Rule 29 as a violation of Plaintiffs' Fourteenth Amendment due process right to a fair hearing before an impartial tribunal.

## IV. Conclusion

For the foregoing reasons, and those provided in the memorandum in support of Plaintiffs' motion for summary judgment, Plaintiffs respectfully request that the Court grant its Motion for Summary Judgment, and deny Defendant's Cross-Motion for Summary Judgment.

Dated: August 4, 2008

*/s/ S Caudill*

Scott Caudill (WVSB #8961)
CAUDILL LAW
100 Capitol Street, Suite 1100
Charleston, WV 25301
Telephone: (304) 344-3510
scottcaudill@wvdsl.net

Robert D. Luskin
Patrick J. Slevin
Kathryn Biber Chen
John C. Hilton
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037-1350
Telephone: (202) 457-6190
Facsimile: (202) 457-6315
rluskin@pattonboggs.com
pslevin@pattonboggs.com
kbiberchen@pattonboggs.com
jhilton@pattonboggs.com

COUNSEL TO MASSEY ENERGY
COMPANY AND MARFORK COAL
COMPANY, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| MASSEY ENERGY COMPANY,<br><br>and<br><br>MARFORK COAL COMPANY, INC., a subsidiary of Massey Energy Company,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE WEST VIRGINIA SUPREME COURT OF APPEALS,<br><br>*Defendant.* | CIVIL ACTION NO. 2:06-0614<br>(Honorable John T. Copenhaver, Jr.) |

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2008, PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT was served upon opposing counsel via electronic mail and first class U.S. Mail, as follows:

John H. Tinney, Esq. (johntinney@tinneylawfirm.com)
John H. Tinney, Jr., Esq. (jacktinney@tinneylawfirm.com)
James K. Tinney, Esq. (jimtinney@tinneylawfirm.com)

The Tinney Law Firm, PLLC
Chase Tower, 14th Floor
707 Virginia Street, East
Charleston, WV 25301
*Counsel for Defendant*

_____
Scott Caudill (WVSB #8961)
CAUDILL LAW
100 Capitol Street, Suite 1100
Charleston, WV 25301
Phone: (304) 344-3510
scottcaudill@wvdsl.net
*Co-Counsel for Plaintiffs*